2010 VT 57

## State of Vermont v. Matthew Birchard

[5 A.3d 879]

No. 08-477

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 24, 2010

*William H. Sorrell*, Attorney General, *John Treadwell*, Assistant Attorney General, and *Andrew Delaney*, Law Clerk, Montpelier, for Plaintiff-Appellee.

*David Williams* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant.

¶ 1. **Burgess, J.** The sole issue on appeal is whether, under Article 11 of the Vermont Constitution, evidence the court finds is illegally obtained must be suppressed at trial. Because the trial court correctly concluded the warrantless police search of defendant's closed backpack violated his expectation of privacy in the bag, the court should have suppressed the fruits of the illegal search, including the contraband seized and identified as the basis for the charge. Accordingly, we reverse.

¶ 2. On December 13, 2006, United States Border Patrol agents stopped Kirk Thornton as he tried to enter the United States from Canada while in possession of approximately two pounds of marijuana. The agents seized the drugs and arrested Thornton. Following his arrest, Thornton met with an officer of the Vermont Drug Task Force, disclosed the identity of his intended "customer," and signed an agreement to act as a confidential informant. The objective of this arrangement was that Thornton would proceed with a so-called "controlled delivery" of the marijuana to the customer, "Matt," while under law enforcement supervision. The plan was that police would visually and electronically monitor the exchange from their vehicles, and then move in when they had a signal that the transaction was complete. The officers and Thornton agreed to a trigger phrase meant to indicate that Thornton had traded the drugs for cash from defendant: "Are you happy with that?"

¶ 3. On the morning of December 15, 2006, police first searched Thornton and his vehicle to be sure it was clear of all contraband, then outfitted Thornton and his vehicle with transmitting and recording equipment. Police placed the previously-seized marijuana in Thornton's backpack and put the pack in Thornton's car. Thornton then proceeded to a Wendy's parking lot in Newport, Vermont where defendant met him. Defendant and Thornton could

be observed through the car windows and heard over an audio wire by officers. None of the officers actually saw drugs or money being exchanged, as the activity was kept below the window level of the car. Officers, however, did hear Thornton say over the wire: "Are you happy with that?" Then, officers approached and arrested defendant.

¶ 4. When the arresting officer had defendant in custody, he observed a new backpack that had not been in Thornton's car during the earlier sweep of the car. The pack was zipped closed. The officer in charge immediately grabbed the pack and opened it, revealing the marijuana police had seized earlier from Thornton. Defendant was not asked by police to identify the pack as his own, nor did he do so voluntarily.

¶ 5. Defendant moved to suppress the marijuana evidence on the basis that the warrantless search of the backpack violated Article 11 of the Vermont Constitution. The State opposed the motion. The trial court held that the search of defendant's closed backpack violated Article 11. The court concluded that the evidence had been unlawfully obtained, reasoning that once defendant zipped his bag, "he regained and reasserted his reasonable expectation of privacy in that [closed] container." It rejected the State's arguments for exceptions to the warrant requirement based on theories of third-party consent, activities in a public place, and a "search-related-to-offense" theory borrowed from Oregon law.

¶ 6. The court, however, nullified its suppression order by carving out a state property exception comparable to the inevitable discovery rule. The court reasoned that because the State at one point had possession of the marijuana and had placed it in Thornton's car, it had a "sense and memory" of the existence of the marijuana separate and independent of its discovery in the backpack. The trial court determined that, by virtue of the marijuana being "at all times after its seizure from Thornton, property of the State," the State was "free to introduce the marijuana and have it analyzed and introduce those results" and would be "wholly free to explain all the facts surrounding the backpack including its size, shape, etc., in support of [its] case," as long as it did not "identify the marijuana as having been contained in [defendant's] backpack based upon the officer's view of it inside the bag after opening the backpack zipper." Nevertheless, the court reiterated its conclusions that defendant

did have an expectation of privacy in his closed, opaque backpack that police found in Thornton's car. Thornton's prior express consent for police to search his car did not overcome the Defendant's expectation of privacy in his bag. Nor does warrantless electronic monitoring automatically give police the power under Article 11 to perform warrantless searches of closed containers in automobiles.

¶ 7. The case proceeded to trial, where the court allowed the prosecutor to question the arresting officer about "the marijuana . . . originally . . . in [Thornton's] backpack" and allowed the officer to testify that he had found the marijuana "in front of the front passenger's seat on the floor" of Thornton's vehicle. Defense counsel immediately requested a bench conference, objected to the testimony, and moved for a mistrial. The State opposed the motion. The court overruled defense counsel's objections and denied the motion for a mistrial. Defendant was convicted and appealed.

¶ 8. On appeal, defendant contends that where the court finds evidence was obtained by an unlawful search, Article 11 of the Vermont Constitution requires suppression of the evidence at trial. Defendant further argues that, because the trial court ruled that the evidence was seized in violation of Article 11 and did not describe grounds for an exception recognized by Vermont law, the contents of defendant's backpack should have been suppressed and that the proper remedy on appeal is a new trial. We agree the court did not articulate an adequate basis for an exception to the warrant requirement and reverse.

¶ 9. On motion of a defendant, the court may grant a new trial if required "in the interests of justice." V.R.Cr.P. 33; *State v. Turner*, 2003 VT 73, ¶ 11, 175 Vt. 595, 830 A.2d 122 (mem.). Although the decision to grant a motion for a new trial is normally entrusted to the discretion of the trial court, "this Court will reverse upon a showing that the trial court abused or withheld its discretion, or exercised it on untenable grounds." *State v. Aiken*, 2004 VT 96, ¶ 9, 177 Vt. 566, 862 A.2d 285 (mem.). Where the trial court has denied a motion for a new trial on any legal grounds, this Court must consider whether its denial is untenable. *State v. McKeen*, 165 Vt. 469, 472, 685 A.2d 1090, 1092 (1996) ("Absent a showing of abuse or withholding of discretion,

the trial court's decision will be upheld."). Where a court's failure to suppress illegally obtained evidence of possession substantially prejudices a defendant's ability to prepare and present his case, the proper remedy is to grant a new trial because to do otherwise would allow police to invade citizens' privacy with impunity. *State v. Lussier*, 171 Vt. 19, 33, 757 A.2d 1017, 1026-27 (2000) (stating exclusionary rule "protect[s] the core value of privacy embraced in Article 11, . . . promote[s] the public's trust in the judicial system, and . . . assure[s] that unlawful police conduct is not encouraged").

¶ 10. The determination we must first make in this appeal is whether the trial court's factual findings support the conclusion that, as a matter of law, suppression was unnecessary. If we find that suppression was necessary to protect defendant's substantial rights, then we must assess whether failure to suppress the evidence sufficiently prejudiced defendant to warrant a new trial. We review orders on a motion to suppress in two steps. *State v. Freeman*, 2004 VT 56, ¶ 7, 177 Vt. 478, 857 A.2d 295 (mem.). First, the underlying findings of fact are reviewed for clear error. *State v. Cunningham*, 2008 VT 43, ¶ 14, 183 Vt. 401, 954 A.2d 1290. If those findings are supported by the record, we then review the legal issues de novo. *Id.*; *State v. Lawrence*, 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.).

¶ 11. Vermont law ordinarily requires suppression of evidence obtained as a result of an illegal search. See, e.g., *State v. Bauder*, 2007 VT 16, ¶ 22, 181 Vt. 392, 924 A.2d 38; *State v. Welch*, 160 Vt. 70, 99, 624 A.2d 1105, 1121 (1992). While federal law has developed some exceptions removing impediments to expedient law enforcement operations, this Court has been more conservative in its adherence to the values underlying Article 11. See, e.g., *State v. Kirchoff*, 156 Vt. 1, 6, 587 A.2d 988, 992 (1991). As a result, Vermont law resolutely maintains that law enforcement must seek, and a magistrate must grant, a search warrant prior to investigating the contents of a person's home, vehicle, or personal effects. *State v. Geraw*, 173 Vt. 350, 352, 795 A.2d 1219, 1221 (2002); see also *State v. Savva*, 159 Vt. 75, 85, 616 A.2d 774, 779 (1991) (noting that "absent exceptional circumstances, the decision to invade the privacy of an individual's personal effects should be made be a neutral magistrate rather than an agent of the Executive" (quotation omitted)); *Lincoln v. Smith*, 27 Vt. 328, 350 (1855) ("The right of search was complete in the officer . . . at the time the warrant issued."). "[W]arrantless searches are per se

unreasonable except in a few jealously and carefully drawn exceptional circumstances." *State v. Meunier*, 137 Vt. 586, 588, 409 A.2d 583, 584 (1979) (quotations omitted).

¶ 12. Under the Vermont Constitution, unlike the federal constitution, protection against warrantless searches extends to automobiles. See *Bauder*, 2007 VT 16, ¶ 1. To search a vehicle without a warrant, we have so far held there must be probable cause and exigency. *Id.* ¶ 32. Law enforcement officers may not search a vehicle without a warrant once the occupant has been put into police custody, absent a need to protect officers or preserve evidence of a crime. *Id.* ¶ 21. We have held that the latter requirement also requires some showing of exceptional circumstances. *Cunningham*, 2008 VT 43, ¶ 16 (quoting *State v. Berard*, 154 Vt. 306, 310-11, 576 A.2d 118, 120-21 (1990)). The mobility of a car or its contents is not per se an exigent circumstance. *State v. Trudeau*, 165 Vt. 355, 361, 683 A.2d 725, 729 (1996). Similarly, the fact that a container for which the police have probable cause is found in a vehicle does not, in and of itself, constitute an exigency or other exception sufficient to dispense with the warrant requirement and invade an otherwise legitimate and reasonable expectation of privacy in that container. *Id.*

¶ 13. In *Savva*, we announced the rule controlling our decision today that police cannot open and search a closed container when there is ample opportunity to obtain a warrant prior to doing so. 159 Vt. at 91, 616 A.2d at 783 (summarizing its conclusion that where no exigency exists, "a legitimate expectation of privacy was implicated" by the defendant's closed paper bags found in the hatchback of his car). Our decision in that case was grounded in a "separate and higher expectation of privacy" for the contents of such containers over objects in a vehicle exposed to plain view. *Id.* at 88, 616 A.2d at 781. Even where probable cause exists to seize a closed container, that does not override the requirement for a warrant: police must proceed in the least intrusive manner with respect to a defendant's expectations of privacy in that container, obtaining a defendant's permission to search or seeking the oversight of a magistrate. *Id.* at 90, 616 A.2d at 782; accord *State v. Platt*, 154 Vt. 179, 188, 574 A.2d 789, 794 (1990) (finding that by merely seizing defendant's car until a warrant could be obtained to search it, police "acted in the least intrusive manner possible under the circumstances"). Once seized,

the container may be either opened pursuant to a warrant or under an exception to the requirements of Article 11. See *Savva*, 159 Vt. at 89, 616 A.2d at 782; accord *Horton v. California*, 496 U.S. 128, 141 n.11 (1990). We have declined to approve of administrative efficiency as an adequate grounds for such an exception, *Bauder*, 2007 VT 16, ¶¶ 11-12, choosing instead to preserve, whenever possible, the essential checks on unrestrained executive power by ensuring review by an impartial magistrate prior to a governmental invasion of privacy. *Id.* ¶ 13.

¶ 14. The State asserts that the evidence of the marijuana should be admissible and advances several theories for an exception to Article 11 guarantees. First, the State argues that defendant, by participating in a drug sale in a restaurant parking lot during daylight hours, willingly exposed his activities to the public, and therefore had no reasonable expectation of privacy. Second, the State posits that a search-incident-to-arrest of a closed container narrowly directed towards discovering evidence of the immediate criminal charge for which there is probable cause does not violate Article 11. Third, the State asserts that Thornton's prior consent to search his car and containers extends to searches of containers belonging to passengers when officers have probable cause to suspect they contain evidence. Finally, the State asserts that the trial court's suppression of the marijuana on privacy grounds was error not only in light of the inevitable discovery doctrine, but because the marijuana was properly admitted based on the reasoning that the State was only reasserting control over its own property. We address these in turn.

¶ 15. There is no exception for activities willingly exposed to the public at issue here. Our case law does recognize an exception to the warrant requirement where evidence was obtained by electronic monitoring of a conversation in a public parking lot and during an investigative stop in a defendant's residential driveway. *State v. Brooks*, 157 Vt. 490, 494, 601 A.2d 963, 965 (1991); *State v. Ryea*, 153 Vt. 451, 453, 571 A.2d 674, 675 (1990). Implicit in those exceptions is the rationale that once one has willingly exposed himself and his activities to the public, despite his actual expectations, he cannot, in retrospect, selectively claim seclusion under Article 11. There is no such exposure of the evidence here.

¶ 16. Today's inquiry properly concerns defendant's expectation of privacy in the backpack only, not in the activities taking

place in Thornton's vehicle. While defendant's activities were monitored by electronic wire and partially observed by police, and did occur in a public parking lot, defendant does not seek to suppress evidence obtained through this surveillance. Cf. *State v. Muhammad*, 2007 VT 36, ¶ 7, 182 Vt. 556, 927 A.2d 769 (mem.) (noting trial court properly suppressed evidence derived from electronic monitoring). Rather, defendant seeks to suppress evidence of the concealed contents of his backpack, the nature of which may have been presumed by police but could not be confirmed without opening the container. The court found that although defendant did not have a reasonable expectation of privacy in his activities monitored over the wire or anything he willingly exposed to the public, since "Defendant's backpack was a closed, opaque container [that] conceal[ed] its inner contents from the public eye," by zipping it defendant had "reasserted his reasonable expectation of privacy." Making an "'objective' inquiry into whether a reasonable person would know that someone placing articles as defendant did intended to exclude them from public view," *Savva*, 159 Vt. at 89, 616 A.2d at 782 (quoting *Kirchoff*, 156 Vt. at 10, 587 A.2d at 994), we conclude that there is no error in the court's finding. *In re M.B.*, 2004 VT 58, ¶ 6, 177 Vt. 481, 857 A.2d 772 (mem.) (stating that this Court will not disturb a trial court's factual findings "if there is any reasonable and credible evidence to support them"). By comparison, in *Savva*, a paper bag — deemed a closed container — sufficiently warranted an expectation of privacy. Here the bag was a zipped backpack. Regardless of the openness of the transaction between defendant and Thornton, the transaction was obviously not open to the general public, and the object of the transaction was contained in the closed pack. Thus, the trial court correctly ruled that defendant's actions manifested an actual expectation of privacy.

¶ 17. The State urges, nonetheless, that defendant had no legitimate expectation of privacy in his backpack because his activities occurred in a public parking lot, and he was being monitored in any event. The State says that the openness of the transaction is material because the officers were able to deduce, from monitoring the conversation and hearing Thornton signal over the electronic monitor, that the pack had to contain the marijuana. Evidence gathered by voice-monitoring of a private conversation or surveillance of a parking lot or driveway may constitute probable cause to arrest, but it does not create an

exception to the warrant requirement for a closed container search. For, as already stated, probable cause to arrest does not alone make a warrantless search lawful. See *Bauder*, 2007 VT 16, ¶¶ 24, 32. Where defendant had an expectation of privacy — as here in the closed backpack — the burden then shifts to the State to show a warrantless search is not prohibited under Article 11. See *id.* ¶ 14. There must be "a well-recognized exception," *id.* ¶ 14 n.4, that the warrantless search was justified because of a threat to officer safety, to preserve evidence, or another exception "factually and narrowly tied to exigent circumstances and reasonable expectations of privacy." *Id.* ¶ 14 (quotation omitted). In this case, the State was required, but failed, to show that the owner of the closed container had no right to judicial scrutiny prior to the proposed search. See *id.*

¶ 18. In the alternative, the State proposes we adopt a new exception, similar to one asserted to be in place in Oregon, for a "search-incident-to-arrest of a closed container directed only toward discovering evidence of the crime with which the person is charged." As the State presents it, Oregon allows for an officer to conduct a warrantless search for contraband reasonably related to the crime for which the defendant was arrested. *State v. Owens*, 729 P.2d 524, 527-28 (Or. 1986); see also *State v. Flores*, 685 P.2d 999, 1013 (Or. Ct. App. 1984) ("[W]hen an arrest is for possession of contraband, a search of the person and the area within the immediate control of the person for evidence of that offense — including the opening of closed containers — is permissible."). Under the *Owens* rule, a closed container is subject to search if: (1) the closed container is found on, or immediately associated with, the arrestee; and (2) viewing the known circumstances of the arrest, the officer reasonably believed that in that container he would find evidence of the crime for which the arrest was made. *Owens*, 729 P.2d at 527-28. This, argues the State, is the "Oregon exception."

¶ 19. We have not adopted many exceptions to exclusion under Article 11, nor do we adopt a new one today. Later Oregon case law indicates that Oregon's exception is much narrower than the State asserts and is inapplicable to the facts presented here. For the seized evidence to be admissible under the Oregon exception, the State must be able to show that "the container at issue holds *nothing other than contraband." State v. Kruchek*, 969 P.2d 386, 390 (Or. Ct. App. 1998) (emphasis added). As *Kruchek* clarified,

the closed container in question must sufficiently announce all of its contents so that opening it will not constitute any further intrusion into the privacy of the person to whom it belongs. *Id.* at 390 n.4. The State neither presents nor argues the same or similar circumstances underlying the so-called Oregon exception to the exclusionary rule. Therefore Oregon's approach does not influence our decision in this case.

¶ 20. The State also asks the Court to extend Thornton's consent-to-search his vehicle to the contents of his passenger's closed container. The State argues such a rule is within the scope of Article 11 when officers have an objectively reasonable suspicion that a passenger's belongings are being used to conceal evidence directly related to the reason for arrest or detainment. Such a rule would subject third parties to the State's version of the Oregon exception discussed and rejected above. See *supra*, ¶¶ 18-19. The State presents no precedent supporting such a rule, and adopting such an exception would allow anyone who owned or controlled a vehicle involved in an arrest to consent to a search of any passenger's belongings. This would be especially convenient in the context of controlled drug transactions where police could rely on consent from confidential informants. But to obviate the involvement of an impartial magistrate in such a manner plainly violates Article 11.

¶ 21. The State finally argues, on appeal only, that the search was not subject to the exclusionary rule because the officer's certainty that the marijuana was in the bag made its discovery inevitable. Where there has been illegal police conduct rendering critical evidence in a case, the exclusionary rule may arguably be overcome by either of two avenues. The evidence may be admitted if the court determines that "the evidence in question would inevitably have been discovered without reference to the police error or misconduct, [so] there is no nexus sufficient to provide a taint and the evidence is admissible." *Nix v. Williams*, 467 U.S. 431, 448 (1984); see also *id.* at 442 (stating that the proper question for the court is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made [at the suppression hearing or trial] has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (quotation omitted)). Or, the evidence may be admitted through an independent source which is completely removed from the circumstances

of the illegal search. *Id.* at 443. The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation. *Id.*

■ ¶ 22. We have held it harmless error where suppressed testimony or evidence could also be obtained by means sufficiently distinguishable from the primary illegality. The two leading cases on this point are *Muhammad*, 2007 VT 36, and *State v. Phillips*, 140 Vt. 210, 436 A.2d 746 (1981). In *Phillips*, the initial detention of defendant was invalid, raising the question of whether probable cause, which unquestionably existed, was sufficiently attenuated from the illegal detention to justify the subsequent search. The Court ruled that it was, because new information — an outstanding warrant for defendant's arrest on another charge — came in between the illegal detention and the subsequent search. *Phillips*, 140 Vt. at 218, 436 A.2d at 751.

¶ 23. We discussed the limits of our *Phillips* holding in *Cunningham*, 2008 VT 43, ¶ 38 n.7, when responding to the dissent's argument that the derivative evidence doctrine applies where the police "inevitably would have" conducted a dog sniff of the car at some later time to discover the drug evidence:

> While it may be that the sniff would have gone forward at some future time even if defendant had been allowed to leave the scene, we simply have no idea — and neither did the trial court — what might actually have happened had defendant gone on his way before the dog arrived.

*Id.* (plurality opinion).

¶ 24. In *Muhammad*, we ruled that the prosecutor's use of a recording obtained by wireless monitoring of a defendant and a confidential informant in a public place did not violate Article 11. 2007 VT 36, ¶ 7. As in the instant case, *Muhammad* involved a controlled buy and electronic monitoring of a conversation. But at issue there was the direct use of the recording as evidence.

■ ¶ 25. In the instant appeal, we note that the State failed to brief or argue the existence of an exception under either the derivative evidence or independent source doctrine in the suppression hearing below. Neither party presents any substantive analysis or argument on these issues to this Court. Although we have occasionally directed rebriefing of inadequately briefed constitutional issues, *State v. Jewett*, 146 Vt. 221, 222, 500 A.2d 233, 234

(1985), our usual disposition is not to consider them. *Cunningham*, 2008 VT 43, ¶ 18 n.5. Because this issue was raised sua sponte by the court below, however, and used as the basis for its decision, we will address the applicability of these doctrines.

¶ 26. The trial court, citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963), without explaining how it applies, concluded that the contents of defendant's backpack inevitably would have been discovered independent of the illegality because the officer had an independent "sense and memory" of the marijuana's whereabouts. Building on the suppression order, the State contends it does not have to provide an independent source or show lack of nexus between the unlawful police conduct and the evidence because the content of the bag "was already known to a reasonable degree of certainty," and "[a] warrant would have been issued." The court, however, provided no findings to explain its conclusion, and the record does not on its own support this argument.

¶ 27. The State cites *Cunningham*, but fails to provide facts showing an independent witness or other evidence to prove possession or show that the record supports the marijuana being discovered independently of the illegal search. The investigating officer's own testimony was that he had to open the backpack to see what was in it. We rejected such a constructive plain view doctrine in *Bauder*, 2007 VT 16, ¶ 29, where the officer asserted in hindsight that the object could have been plainly viewed or contents known when in fact it was not. The plain-view doctrine comes into play as an exception only where an officer *has* observed the object in question from a legal vantage point.

¶ 28. Finally, the State relies on the trial court's novel basis on which to find harmless error. Though it did not raise the issue below, the State asks us to establish a state property exception classifying a search as not within the protection of Article 11 if property within the state's control is involved. The trial court applied this rule, reasoning that the marijuana was not a fruit of the illegal search "since it was, at all times after its seizure from Thornton, property of the State." Such a state property exception has yet to be recognized in Vermont. As well, neither the State nor the trial court supplies a rational basis for such a rule.

¶ 29. Both the trial court and the State rely on a Second Circuit case, *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973), for a

rule later adopted by the United States Supreme Court in *Illinois v. Andreas*, 463 U.S. 765 (1983), upholding the legality of a warrantless search of a closed luggage bag after customs had legally opened it at a border stop. *Id.* at 770. We adopted a substantially similar rule in *State v. Coburn*, 165 Vt. 318, 326, 683 A.2d 1343, 1347 (1996) (concluding that because search is "lawful under the Fourth Amendment, using a plain-view rationale, it is similarly lawful under the Vermont Constitution using the same rationale.").

¶ 30. None of the above cases is on point because the bag last searched in this case is *not* the same as the bag lawfully seized and opened by agents earlier. There was no "continuation of the legal [search]" of the same container tantamount to reviewing the same contraband once already in the officer's plain view. *Id.* at 323, 683 A.2d at 1346. We do not find, under the reasoning of *Coburn*, that the introduction of evidence from the illegal search was harmless. Furthermore, because the State did not explain in its brief how or why such a theory should shape an exception to the warrant requirement, we do not need to address the State's argument that it can introduce anything it owns regardless of the legality of the means used to uncover defendant's possession of the item. See *In re Dunnett*, 172 Vt. 196, 203 n.∗, 776 A.2d 406, 412 n.∗ (2001) (we will not address issues not briefed on appeal).

¶ 31. Nor do we find comfort in the State's assurance in hindsight that "[a] warrant would have . . . issued" if sought, or that "officers could be practically certain the marijuana would be found somewhere in the car." To extend the derivative evidence or independent source doctrines as invited would mean where discovered contraband was once under state control, no matter the means used to rediscover it, it would be admissible. This puts too broad a meaning on "state property" and "inevitability." Given the illegality of the search and lack of an independent basis for introducing the marijuana in defendant's bag, suppression of the evidence obtained was necessary.

¶ 32. Testimony by the agents that they found the marijuana "in front of the front passenger's seat on the floor" serves the impermissible purpose of using its illegal discovery to prove defendant's possession and physical control of, and immediate access to, the marijuana. The suppression order should have

precluded this maneuver. Having found that suppression was necessary, it was error for the trial court to sidestep its suppression order by allowing the State to introduce evidence of "its" property being found on the floor in front of defendant as if it had not been illegally first discovered in his backpack. While not exposing the jury to an illegal search, the ruse nevertheless exposed the jury to the illegally obtained evidence. The point of the trial court's suppression — to remove the fruit of an invalid search from the fact-finder — was entirely defeated by the trial court's later ruling. Doing so prejudiced defendant by negating the suppression ruling.

¶ 33. In sum, the court's allowing the agents to testify to the presence of marijuana on the passenger floor, thereby connecting the contraband to the defendant's location in the car, does not adequately satisfy the suppression requirement here. The arresting agents should not be allowed to confirm defendant's possession of the marijuana by connecting it to his bag or his location in the car as a result of the warrantless search. We therefore hold the court's denial of defendant's motion for a new trial was untenable and grant a new trial.

*Reversed and remanded for a new trial.*