## State of Vermont v. Gary Goyette

[594 A.2d 432]

No: 89-440

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed May 31, 1991

*Mark T. Cameron*, Windsor County Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant appeals from a jury verdict convicting him of possession of cocaine. We affirm.

On September 11, 1987, a confidential informant told Vermont state police that someone from another state[1] would be transporting cocaine into Vermont, would be staying at the home of Robert Stillwell, and would be taking part in a substantial drug deal the following day. Acting upon this information, a state police officer went to the Stillwell residence, where he observed two out-of-state cars, one registered to Mr. Stillwell's wife and the other registered to defendant.

The next morning, the informant told police that Peter Holl, a man known to police through other drug investigations, would be introducing the out-of-state resident to a suspected drug dealer living in Chester, Vermont. At that point, police set up surveillance at the dealer's residence. That same morning, the surveillance units observed the dealer leave his Chester resi-

---

[1] The informant did not name the person, who turned out to be defendant.

dence. Shortly thereafter, they observed Holl and defendant arrive, stay approximately two hours, and then depart. Defendant was a front-seat passenger in the car, which was driven by Holl and owned by Holl's girlfriend.

The police followed the car after it left the residence and stopped it approximately three or four miles from the dealer's residence. As the police were pulling the car over, two of the police officers noticed defendant duck down as if he were placing or retrieving something from under his seat. When the car was stopped, the police officers ordered the occupants out of the vehicle and immediately seized two bags of what appeared to be cocaine from underneath the front passenger seat. The two occupants of the car were arrested after the cocaine was discovered.

Holl pled guilty to a reduced charge and received a suspended sentence in return for his agreement to testify against defendant. A jury found defendant guilty of possession of cocaine, and he was sentenced to serve thirty months to five years. On appeal, defendant contends that (1) the police lacked probable cause to search the car; (2) the prosecutor elicited exculpatory evidence from a witness under a promise of immunity and failed to reveal the evidence to the defense in a timely manner; (3) a testifying officer wilfully violated the trial court's order prohibiting comment about the existence of a confidential informant; and (4) the trial court erroneously charged the jury that it could infer defendant's knowing possession of cocaine from the fact that he was an occupant of the car at the time the cocaine was found.

I.

Defendant first argues that the court erred in not suppressing the evidence seized from the car because the police lacked probable cause to search the car. Specifically, defendant claims that the search violated V.R.Cr.P. 41(c) and the Fourth Amendment of the United States Constitution because the police had no knowledge of the source of the informant's information. We conclude that the police had sufficient probable cause to search the car.

Under the Fourth Amendment, a warrantless search of a vehicle is valid if based on probable cause. *State v. Platt,*

154 Vt. 179, 184, 574 A.2d 789, 792 (1990) (citing federal case law). The central inquiry in determining whether there was probable cause for the search of a vehicle is whether the police reasonably concluded that the car contained evidence of a crime. *State v. Girouard*, 135 Vt. 123, 129, 373 A.2d 836, 841 (1977). While both defendant and the State assume the relevance of V.R.Cr.P. 41, the Rule is inapplicable here because it concerns the criteria for a valid search warrant; it does not concern warrantless searches. See *State v. Brown*, 151 Vt. 533, 535, 562 A.2d 1057, 1058 (1989).

Under the federal "totality of the circumstances" standard,[2] the reliability of the informant and the basis of the informant's knowledge are but two intertwined factors that may be useful in making the commonsense determination of whether, given all the circumstances and information available to the police at the time of the search, there is a substantial basis for the police's belief that there was a fair probability of finding evidence of a crime in a particular place. *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983). The Court in *Gates* stated that the failure of a reliable informant to set forth the basis of his knowledge "should not serve as an absolute bar to a finding of probable cause based on his tip." *Id*. at 233. The Court also noted that seemingly innocent behavior might corroborate an informant's tip predicting the behavior, thus providing the basis for a showing of probable cause. *Id*. at 243 n.13. According to the Court, "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id*.

---

[2] The precise standard under the United States Constitution for determining whether there is probable cause for a warrantless search is not entirely clear; however, the "totality of the circumstances" standard announced in *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983), is generally accepted as the probable cause benchmark in warrantless situations. 1 W. LaFave, Search and Seizure § 3.1(c), at 551 (2d ed. 1987); see *Eisenhauer v. State*, 678 S.W.2d 947, 952 (Tex. Crim. App. 1984) (en banc) (construing Fourth Amendment, court held that *Gates* "totality of circumstances" standard "is applicable to warrantless arrests and searches"). But cf. *United States v. Ventresca*, 380 U.S. 102, 106 (1965) ("in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall").

This standard is easily met here.[3] In the instant case, a confidential informant who had reliably provided tips on drug transactions in the past stated that (1) an out-of-state resident would be transporting drugs into the state on September 11, 1987; (2) a substantial drug deal would take place the following day; (3) the out-of-state resident would be staying overnight at the home of a man named Robert Stillwell; and (4) Peter Holl, a man known to the police, would be bringing the out-of-state resident to the home of a Chester man, another man known to police from prior drug investigations, in order to complete the drug transaction. Acting on the informant's tip, the police observed that a car with out-of-state plates and not belonging to anyone living at the Stillwell residence was parked at the home of Robert Stillwell. The following day, the surveillance units observed Peter Holl and defendant arrive at the Chester residence where the drug transaction was to take place.

We conclude that police corroboration of the predicted movements, coupled with the fact that police officers observed defendant bend down in the car as if he were placing something under the front passenger seat, was sufficient information for the police to believe at the time of the search that there was a fair probability of finding evidence of a crime in the car. The details provided by the informant were substantial enough, and the actions of defendant, taken as a whole and considering police corroboration of the informant's prediction of these actions, were suspicious enough, for the police to reasonably believe

---

[3] Indeed, the facts of this case would most likely have satisfied the more precise *Aguilar-Spinelli* standard that was abandoned in *Gates*. Strong police corroboration of the details of an informant's tip predicting movements that are seemingly innocent but suspicious when considered together may satisfy the "basis of knowledge" prong of that test. W. LaFave, *supra*, note 2, § 3.3(a), at 618; e.g., *United States v. Young*, 567 F.2d 799, 802 (8th Cir. 1977) (probable cause for warrantless search existed where police had received tip that on certain day a rental truck escorted by a particular car and passenger would be carrying stolen merchandise across state line, and truck took unusual route at night to arrive at destination), *cert. denied*, 434 U.S. 1079 (1978); *Commonwealth v. Robinson*, 403 Mass. 163, 166, 526 N.E.2d 778, 780 (1988) (where police corroborated information describing the defendant's appearance and predicting the defendant's time of arrival at a particular destination, "basis of knowledge" prong of *Aguilar-Spinelli* test was satisfied).

that there were drugs in the car. The court did not err in denying defendant's motion to suppress.

## II.

Next, defendant argues that he should be granted a new trial because the prosecutor elicited exculpatory evidence from a witness under a promise of immunity but failed to reveal this information to the defense until after the evidence was closed. Defendant initially sought to depose Robert Stillwell, at whose home defendant stayed the night before he was arrested, but Stillwell's attorney told defendant that Stillwell would invoke the Fifth Amendment in response to questions at the deposition and at trial. Later, the State informed Stillwell, who had been listed as a witness for both the defense and the State, that it would give him use immunity in return for his testimony that he knew defendant and that defendant stayed at his house the night before the arrest. Stillwell stated to the prosecutor that he knew defendant and that defendant had stayed at his house that night. During that conversation, he also stated that he did not believe Peter Holl, who apparently had told police that Stillwell was involved in the drug transaction. Because ultimately defendant did not testify at trial, the State did not call Stillwell as a witness.

Defendant argues that Stillwell's refutation of Holl's story was exculpatory, and that the prosecutor should have turned the information over to the defense. Because we conclude that Stillwell's comments to the prosecutor were not sufficiently material to defendant's guilt, and that the State did not act with the deliberate intention of distorting the judicial factfinding process, we need not consider the broader issue of whether the court should have compelled the prosecution to grant immunity to Stillwell as a defense witness. See *State v. Hamlin*, 146 Vt. 97, 107–08, 499 A.2d 45, 53 (1985).

The prosecution violates due process when it fails to disclose evidence favorable to the accused and material to the accused's guilt or punishment. *State v. Goshea*, 137 Vt. 69, 75–76, 398 A.2d 289, 293–94 (1979). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682 (1985); see *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987). Thus, a conviction should be reversed only if the withheld evidence "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 112 (1976); see *State v. Sird,* 148 Vt. 35, 37–40, 528 A.2d 1114, 1115–16 (1987) (discussing development of *Agurs-Bagley* standard and employing it to analyze claim under Vermont Constitution).[4]

■ Upon examining the record, we agree with the trial court that Stillwell's statement to the prosecutor was largely cumulative, and that there is "no reasonable likelihood" that the inclusion of his testimony regarding that statement would have affected the outcome of the trial. It is hardly surprising, notwithstanding the grant of use immunity, that Stillwell would challenge the veracity of a witness who implicated him in a crime. Stillwell's statement would have added little to the defense's vigorous attack on Holl's credibility. During his cross-examination of Holl and again during his closing argument, defense counsel brought out in great detail how much Holl had to gain by "fingering" defendant, pointed out several inconsistencies in statements made by Holl before and during trial, and emphasized Holl's drug-dealing past. The court was well within its discretion in concluding that there was no reasonable probability that the presentation of Stillwell's testimony would have affected the jury's assessment of Holl's credibility. See *State v. Briggs,* 152 Vt. 531, 542, 568 A.2d 779, 785 (1989) (trial court's

---

[4] Neither the parties nor the leading federal cases discuss who has the burden of showing that the prosecution's failure to disclose certain evidence creates a reasonable doubt in the outcome of the trial. Certain language in two recent Vermont cases suggests that the burden of proof lies with the defendant, see *State v. Sird,* 148 Vt. 35, 39, 528 A.2d 1114, 1116 (1987) ("nor has defendant demonstrated prejudice"); *State v. Gibbons,* 146 Vt. 342, 344, 503 A.2d 540, 541–42 (1985) (per curiam) ("defendant failed to demonstrate that ... the result of the proceeding would have been different"), but it could be argued that the quoted language implies only that the defendant has an initial burden of coming forward with evidence that he was prejudiced. We need not address the question here because, even if the burden of proof was on the State, the court's refusal to grant a new trial was not an abuse of discretion.

decision on motion for new trial will not be disturbed on appeal unless defendant shows that the court's discretion was withheld or abused); see also *United States v. Petrillo*, 821 F.2d 85, 88 (2d Cir. 1987) (the trial court's decision on whether to grant a new trial because of the prosecutor's failure to turn over exculpatory evidence is given great deference "because it presided over the trial and is better able to determine the effect the new materials would have had").

## III.

■ Defendant next argues that his conviction should be reversed because one of the State's witnesses, a police officer, wilfully violated the trial court's order prohibiting comment about a confidential informant. During direct examination, the police officer responded to a question by testifying that he went to a certain location "directly after I got the call from the informant." Defendant contends that the officer's reference to an informant must have been wilful because he had just been reminded by the prosecutor "not to mention the confidential informant in this case," and defendant reported later that he had observed the officer wink at the prosecutor after making the statement. We do not agree. There is nothing in the record that corroborates defendant's contention that the officer winked or otherwise demonstrated his wilful violation of the court's order. Although the officer's testimony went beyond what the parties and the court had agreed to—the police could indicate only that they were at a particular place at a particular time because they had "received information"—the trial court did not abuse its discretion in refusing to call a mistrial. Unlike the case cited by defendant, *State v. Braxter*, 568 A.2d 311, 313–15 (R.I. 1990), where the appellate court vacated a conviction because the jury had been permitted to hear an officer's testimony recounting the substance of his conversation with an informant, the officer's testimony here did not entail any specific hearsay statement tending to prove defendant's guilt. In short, we fail to see any prejudice resulting from the officer's comment. See *State v. Turner*, 145 Vt. 399, 402, 491 A.2d 338, 340 (1985) (mistrial should not be granted absent prejudice, and trial court decision on motion for mistrial should not be disturbed on appeal absent abuse of discretion).

## IV.

Finally, defendant argues that his federal and state due process rights were violated when the court permitted the jury to infer that defendant was knowingly in possession of the cocaine found under the front seat of the car in which he rode as a passenger. We disagree.

Vermont law provides that, with certain exceptions, the "presence of a regulated drug in an automobile . . . is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such drug was found." 18 V.S.A. § 4221(b). Pursuant to V.R.E. 303 and recent Vermont case law, see, e.g., *State v. McBurney*, 145 Vt. 201, 205, 484 A.2d 926, 928–29 (1984) (unlike mandatory presumption, permissive inference permits but does not require trier of fact to find presumed fact and thus places no unconstitutional burden on defendant; whether charge given imposed a mandatory or permissive presumption depends on how a reasonable juror would have interpreted charge), the court's charge to the jury presented this statutory "presumption" as a "permissive inference":

> Coming to the offense of possession of cocaine alleged by the State, the following are the elements of the offense, each of which you must find to be proven by the State beyond a reasonable doubt on the date and place alleged.
>
> . . . .
>
> . . . [I]n order to establish that the Defendant had possession of the substance in question, the State must prove beyond a reasonable doubt that he exercised dominion and control over it and had the power and the intention to exercise dominion and control over it.
>
> Possession of drugs cannot be found solely on the ground that the Defendant was near or close to the drug, nor can it be found simply because the Defendant was present at the scene or drugs were involved or solely because the Defendant associated with a person who did control the drugs or the property where they were found.
>
> In order to find the Defendant was in constructive possession of drugs found in a car, you must find that the De-

fendant actually knew about the presence of the drugs and intended to exercise control over them.

. . . .

The presence of a regulated drug in an automobile . . . permits you the jury to infer the knowing possession of such a regulated drug by each and every person in the automobile at the time such drug was found.

. . . .

If you decide beyond a reasonable doubt that a regulated drug was present in the automobile at the same time that the Defendant and Peter Holl were in such an automobile, that neither was legally authorized to possess the drug, and that the drug wasn't concealed [upon the person of one of the occupants], then you are permitted but not compelled to infer that both the occupants knowingly possessed the drug in the vehicle.

In other words, you may draw the inference that both individuals were in possession of the cocaine, but you do not have to. You must consider all of the circumstances tending to support or contradict the inference in determining whether to apply or reject the inference.

The presumption of innocence also comes into play here, however; and if the only evidence of guilt is this inference of knowledgeable possession, that is not enough to overcome the presumption of innocence.

If, however, you find that there is other evidence which makes it more likely that the Defendant knowingly possessed the regulated drug, then you may apply the inference. If the State has not proven beyond a reasonable doubt that the Defendant was present in the motor vehicle at the time the regulated drug was present or that the regulated drug was not legally possessed by the Defendant, or that the drug was not concealed upon the person of one of the occupants, then you may disregard the inference that the Defendant knowingly possessed a regulated drug.

If you decide to disregard the inference, you must find the Defendant guilty beyond a reasonable doubt or not guilty based on your consideration of the remaining evidence.

Defendant contends that the last two paragraphs of the charge erroneously presented the threshold question—whether the inference should be charged at all—thereby confusing the jury into thinking that it need find only by a preponderance of the evidence (more likely than not) that defendant knowingly possessed the cocaine. We agree that the "more likely" language was ill-advised, but we conclude that, taken in its entirety, the charge satisfactorily stated the law. See *State v. Day*, 150 Vt. 119, 123–24, 549 A.2d 1061, 1064 (1988) (although charge was not as clear as might be desired, it breathed true spirit and doctrine of law); *State v. Bishop*, 128 Vt. 221, 230–32, 260 A.2d 393, 399–400 (1969) (when charge, taken as a whole, breathes true spirit and doctrine of the law, it may stand even if it contains expressions that, taken alone, would be erroneous).

In criminal cases, the court may instruct the jury that an inference operating against the accused permits, but does not require, the jury to find the existence of the presumed fact (e.g., knowing possession of cocaine) if the State proves the existence of the basic fact (e.g., presence of person in car at time cocaine is found in car). V.R.E. 303(b). If, as is the case here, the presumed fact establishes guilt or is an element of the offense, the court may instruct the jury on the inference "only if a reasonable juror on the evidence as a whole, including the evidence of the basic fact, could find guilt or the presumed fact beyond a reasonable doubt." V.R.E. 303(c). Further, V.R.E. 303(d) requires the court to instruct the jury that the presumed fact's existence, considering all the evidence, must be proved beyond a reasonable doubt.

We first point out that the court did not err in deciding to instruct the jury on the permissive inference. Based on the evidence presented at trial, including testimony that defendant reached under the front car seat as he was being pulled over, a reasonable juror could have found the existence of the presumed fact (defendant possessed the cocaine) beyond a reasonable doubt. As to the charge itself, the court repeatedly instructed the jury that the State had to prove each element of the charged crime, including knowing possession, beyond a reasonable doubt. Cf. *People v. Hester*, 131 Ill. 2d 91, 101, 544 N.E.2d 797, 802 (1989) (although contested jury instruction on

presumption did not contain "beyond reasonable doubt" language, instruction sufficient where standard was included in later section of instruction). The court emphasized that the State had to prove more than the fact that defendant associated with someone who had control of the cocaine; it had to prove that defendant knew about the cocaine and intended to exercise control over it. The court stated that the jury could accept or reject the inference that defendant was in possession of the cocaine, and that the inference, by itself, could not overcome the presumption of defendant's innocence.

The court then stated that if other evidence, however, made it "more likely that the Defendant knowingly possessed the drug, than you may apply the inference." We note that, even if the court intended to invoke a "more likely than not" standard, the challenged sentence does not do so on its face. The sentence appears only to reinforce the previous sentence, which emphasizes that the inference alone would be insufficient to convict defendant. We do not believe that the sentence lessens the State's burden to prove each element of the charge, particularly when it is considered in the context of the entire charge.

Defendant also argues that the last two sentences of the above-quoted section imply (1) that the jury may not disregard the inference if the State proves any of the three facts noted, and (2) that the jury need not find defendant guilty beyond a reasonable doubt if it decides to accept the inference. Although we agree that those sentences are somewhat confusing and that a hypertechnical reading of them might lead to the implications suggested by defendant, we cannot agree that, read in the context of the entire charge, the sentences constitute reversible error. See *State v. Percy*, 156 Vt. 468, 473, 595 A.2d 248, 250 (1990) (although instruction may have subtly perpetuated incorrect presumption that witness is telling the truth, no error when considered in light of entire charge); *State v. Francis*, 151 Vt. 296, 302, 561 A.2d 392, 396 (1989) (though potentially misleading, instruction on reasonable doubt did not constitute reversible error). In determining whether an instruction on an inference in a criminal case has violated due process, the crucial inquiry is whether the court's instructions have undermined the jury's responsibility at trial to find that

the State has proved each and every element of the crime with which the defendant is charged beyond a reasonable doubt. E.g., *State v. Hudson*, 247 Ga. 36, 38, 273 S.E.2d 616, 617–18 (1981). We conclude that neither the court's charge nor any comments to the jury by the prosecutor undermined the jury's responsibility here.

Defendant argues, however, that in this case, unlike *Ulster County Court v. Allen*, 442 U.S. 140, 163–64 (1979), there is no rational connection in terms of logical probability between the basic fact and the presumed fact. Therefore, according to defendant, submission of the inference to the jury violated due process. We disagree.

■■ In considering whether a statutory inference is rational, courts should evaluate the inference based on the record of the case before it rather than rule on the constitutionality of the statute on its face. *Id.* at 162–63; see *Harley v. State*, 737 P.2d 750, 755 (Wyo. 1987) (established facts in case demonstrated commonsense justification of statutory inference). Examining the record in this case, including the fact that the police had received information leading them to set up a surveillance unit at the residence where defendant showed up and the fact that the police observed defendant reach under the seat as he was being pulled over, we cannot say that the inference was irrational here.

*Affirmed.*