2011 VT 39

## State of Vermont v. David Rounds

[22 A.3d 477]

No. 09-418

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 15, 2011

---

subject of bargain or dealings with third parties and hence does not concern plaintiff's title.

448

450

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Rebecca Turner*, Appellate Defender, and *Cabot Teachout*, Legal Intern, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant, a home improvement contractor, appeals a jury verdict adjudging him guilty of home improvement fraud. He makes three claims of error on appeal: (1) the trial court erred in denying his motion for acquittal because the State failed to establish that he knowingly promised performance that he did not intend to complete, in whole or in part, at the time he entered into the contract, and the court's ruling to the contrary ignores his substantial performance under the contract; (2) the trial court gave a faulty permissive inference instruction that was not supported by the evidence, was contrary to the statutory language of 13 V.S.A. § 2029, violated Vermont Rule of Evidence 303, and impermissibly lowered the State's burden of proof; (3) the permissive inference in 13 V.S.A. § 2029 is unconstitutional on its face. We vacate his conviction for home improvement fraud and remand the case for a new trial because the State did not establish the predicate facts for instructing the jury on the permissive inference, and, as given, the instruction on the permissive inference failed to reflect the requirements of the statute.

¶ 2. The essential facts of the case are largely uncontested. Homeowners, a husband and wife, were residents of New York and purchased a second home in Andover, Vermont, in 2005. Desiring to renovate and expand the home, they hired defendant

as their contractor. They had architectural plans drawn up and met with defendant several times in 2006 to discuss and review these plans. In November 2006, defendant and homeowners entered into a contract for construction of an additional 900 square feet, adding two bedrooms and one bathroom and enlarging the living space on the ground floor. Homeowners also wanted defendant to build a 450 square foot deck off the addition. Based on the plans, defendant quoted homeowners a price of $68,000 to $69,000 for labor and materials, which homeowners thought was "very good." The parties understood at the time of the contract that work could not begin on the home until May 2007, as the road accessing the property was rough and impassable until spring. The final contract apparently never gave a firm completion date, nor did it lay out a payment schedule.[1] Upon execution of the contract, homeowners paid defendant $7000.

¶ 3. Before any work began at the site, homeowners met with defendant in April 2007[2] and informed him that they had found a less expensive source for building materials and would have most of them shipped to the site from New York. The materials cost would then be deducted from the original contract price. Because defendant would need additional supplies from a nearby source, homeowners set up an account for the project at a local lumber yard where defendant could purchase supplies, which would be charged to homeowners. At the April meeting, homeowners paid defendant an additional $5000 to get the job started. When husband visited the house in June and met with defendant, the materials had arrived and work had begun. According to husband, the footings were excavated and possibly poured, and demolition of the wall of the existing home had begun. During the June meeting, defendant brought up concerns about finding a mason to build the new chimney, which would need to be complete before the walls of the addition could be erected. Defendant eventually

---

[1] At trial there was significant debate over the terms of the contract because homeowners did not have a copy of the signed contract and contested the veracity of defendant's copy. The State implies that defendant may have absconded with homeowners' original contract, but has made no more than a vague allegation based on inferences. The contract defendant produced, which was not admitted into evidence, allegedly bore only a copy of husband's signature.

[2] Though they lived in New York, homeowners — usually husband — met with defendant at the house in Vermont roughly once a month between April and November 2007.

contracted with a mason in July, and homeowners wrote defendant a $10,000 check as a deposit for the mason's work.

¶ 4. By August, defendant had completed the foundation of the addition, demolished the rear wall of the house, and framed two walls for the first floor of the addition. At this point, homeowners had serious concerns about the progress of the work. Husband, who worked in real estate development — specifically custom-home construction — estimated that framing a project of this size should have taken two or three weeks at most. Apparently homeowners did not bring their concerns about the slow pace of work to defendant at this August meeting. Even so, defendant explained that the framing was slowed because the mason had not completed the chimney, which was necessary before defendant could tie the addition's roof to the existing roof. Homeowners noted that because the roof was not complete, rainwater had entered the finished basement of the existing house, damaging sheetrock and insulation. At this point, defendant asked homeowners for another progress payment, which they refused. They did give defendant a check for $2000 to purchase a set of French doors for the addition and to pay for waste disposal on the job site. Defendant cashed this check.

¶ 5. Homeowners met with defendant at the house in September and noted that the framing on the addition's second story was completed and the roof was underway — possibly even sheathed — but the house was still not weather tight. Homeowners provided defendant with a progress payment of $10,000 at this meeting. At the end of September, defendant requested an immediate payment of $6715 for materials to complete the roof and pay his roofing crew.

¶ 6. At a meeting in October, homeowners noted that the addition had some metal roofing in place but that the chimney was not yet built to the roof line, and the roof itself was not yet water tight. By the November visit, homeowners still did not believe the roof was weather tight. At this meeting, defendant asked for an immediate additional payment. Husband wrote a check to defendant for $7500 using a check from his credit card company. A few days later, defendant contacted homeowners to request a replacement check, explaining that his bank would take an additional ten days to cash the credit-card check. Homeowners understood that defendant would destroy the original check and sent him a replacement check drawn on their personal bank account. They

later learned that defendant had cashed both checks. Also in November, homeowners received an invoice from the local Vermont lumberyard charging them almost $600 for a set of French doors defendant had purchased, presumably the same doors for which they had already paid defendant.

¶ 7. Homeowners called defendant to request a meeting at the site in December, but, for the first time in their relationship with defendant, they did not receive a return call. After several attempts to contact defendant about a meeting, husband visited the home and determined that little progress had been made since his November visit some three weeks earlier. Siding for the house, which had been delivered in July, was still lying on the ground, unused. Defendant had not installed insulation or sheetrock or any interior doors nor had he begun construction on the deck. Husband testified that the addition's roof was still not tied into the existing house and that some of the work defendant had completed was contrary to the plans the parties had agreed upon when signing the contact.

¶ 8. At this point, communication between the parties completely broke down. Homeowners tried several times to reach defendant to inquire about the lack of progress on the project to no avail. In January 2008 they informed defendant that they were cancelling the contract and his services would no longer be needed. They had paid over $100,000 for the project, roughly $70,000 directly to defendant. They ultimately paid over $30,000 to another contractor to make the addition weather tight, repair water damage done to the finished basement in the existing house, and correct alterations from the original plans. Also in January, homeowners received notice that defendant had sued them for breach of contract. Homeowners eventually countersued for breach and reported defendant's conduct to law enforcement.

¶ 9. Based on these facts, the State charged defendant with three criminal counts: Count One, home improvement fraud under 13 V.S.A. § 2029; Count Two, misdemeanor false pretenses, under 13 V.S.A. § 2002, based on the double payment for the $600 French doors; and Count Three, felony false pretenses, under the same statute, for cashing the two $7500 checks. At the trial, the State's main witness was husband, who had most of the dealings with defendant. Wife also testified. Defendant did not testify or present witnesses.

¶ 10. At the close of the State's case, defendant brought a motion for judgment of acquittal under Vermont Rule of Criminal Procedure 29. In relevant part, he argued that the State had failed to present evidence that at the time he had signed the contract with homeowners he had knowingly promised performance he knew would not be performed. He highlighted the absence of a clear timeline for performance in the contract and the fact that he completed a substantial amount of work. Though he admitted there was more work to be done when he left the project, he argued that this did not constitute evidence that he had intended not to finish the project at the time he had signed the contract nearly a year earlier. The trial court denied his motion. The court recognized that there would rarely be direct evidence of any person's intent "at the specific moment of entering into the contract"; for this reason, it noted that "circumstantial evidence is sufficient under our case law." Relying on such evidence, the court held that the jury could find defendant's intent based upon the slow pace of progress, the significant payments homeowners made during the summer, which "didn't seem to increase the progress of the work," and the fact that defendant had "walked off the job" just after receiving a substantial payment and before the project was complete.

¶ 11. The jury was instructed on the three charges. In giving the instructions on the home-improvement-fraud charge, specifically the element of knowingly promising performance, the trial court included a permissive inference instruction taken from the criminal statute. Though he objected to this instruction on constitutional grounds during the charging conference, defendant did not renew his objection to the instruction after it was read to the jury. The jury found defendant guilty on all three charges. He timely appealed his conviction for home improvement fraud and does not contest the other two convictions here.

I.

¶ 12. Defendant's first argument is that the trial court erred in denying his motion to acquit him on the charge of home improvement fraud. The thrust of his contention is that his substantial performance under the contract belies a finding that he entered the contract with an intent not to complete the project. He additionally argues that because homeowners materially changed the contract after both parties had signed it in November 2006, he

was operating under the terms of a new contract, and his performance under the new agreement could have no bearing on his intent when entering into the original agreement. Given the high standard required for granting such motions, defendant's arguments fail.

¶ 13. On reviewing the denial of a motion for judgment of acquittal, we adopt the same standard as the trial court: we review the evidence "in the light most favorable to the State" and will affirm so long as "there is sufficient evidence to convince a reasonable trier of fact that all the elements of the crime have been proven beyond a reasonable doubt." *State v. McAllister*, 2008 VT 3, ¶ 13, 183 Vt. 126, 945 A.2d 863 (quotation omitted). Defendant faces a significant hurdle for he is entitled to acquittal "only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." *Id.* To achieve a conviction for home improvement fraud, the State had to prove that defendant had knowingly entered into a contract or agreement, written or oral, for $500 or more, for home improvement[3] and knowingly promised performance that he knew would not be performed, in whole or in part. See 13 V.S.A. § 2029(b)(1). On his motion for acquittal, and again on appeal, defendant challenges only the State's evidence with regard to the final element: that he knowingly promised performance that he knew would not be performed, in whole or in part.

¶ 14. As the trial court noted, in most cases direct evidence of a defendant's intent at the time he entered into a contract is rarely available. Rather, circumstantial evidence is most likely to support the State's case. It hardly bears repeating that circumstantial evidence can be sufficient by itself to prove guilt. See, e.g., *State v. Godfrey*, 2010 VT 29, ¶ 18, 187 Vt. 495, 996 A.2d 237 ("Our case law is clear that the guilt of a defendant in a criminal case may be proved by circumstantial evidence alone, if the evidence is proper and sufficient in itself." (quotation omitted)); *McAllister*, 2008 VT 3, ¶ 17 ("The law does not require the State to establish guilt by direct evidence alone."). Indeed, no "greater degree of

---

[3] "Home improvement," as defined by 13 V.S.A. § 2029(a), includes "the fixing, replacing, remodeling, removing, renovation, alteration, conversion, improvement, demolition, or rehabilitation of or addition to any building or land, or any portion thereof, which is used or designed to be used as a residence or dwelling unit."

certainty [is] required of circumstantial evidence than of direct evidence." *McAllister*, 2008 VT 3, ¶ 17.

■ ¶ 15. Under our standard of review, the State met its burden. There was uncontested evidence that progress on the project was slow, almost from the outset. The framing was not substantially completed until October, at least three months after it was begun. Moreover, by the time defendant abandoned the project, he appears to have made very little additional progress. He left the interior work largely incomplete, the roof not entirely tied into the existing house, and the house's siding still on the ground. Equally suggestive was the evidence of his demands for progress payments. Just a few weeks before leaving the project incomplete, he had cashed checks from the homeowners totaling $15,000. At that point, he also ceased communicating with homeowners. This circumstantial evidence is sufficient grounds for denying a motion for judgment of acquittal. While defendant certainly may suggest that there were ambiguities in the original contract, difficulties with subcontractors, poor communication between the parties, or challenges with weather and materials, these were all arguments to be made to the jury.

■ ■ ¶ 16. In the face of this result, defendant points to the work he did complete over the summer and fall. He argues that his "substantial performance" under the contract is "incompatible with the prosecution's theory that he never intended to complete the contract." His argument misses the mark under our standard of review. We do not place ourselves in the jury's stead, weighing the evidence to determine the more probable theory. Rather, we rule on the reasonable sufficiency of the evidence. While it is true, as defendant posits, that under Virginia's home-improvement-fraud statute, Va. Code Ann. § 18.2-200.1, there have been instances where courts have found a defendant's "substantial performance" under a contract sufficient to warrant a judgment of acquittal, the cases defendant cites are unavailing and readily distinguishable on their facts. See, e.g., *Dyer v. Commonwealth*, Record No. 2926-08-2, 2010 WL 271282, at **1-2 (Va. Ct. App. Jan. 26, 2010) (reversing conviction where contractor unable to complete work due to rain, subsequent efforts were made to complete the work, and homeowner cancelled $770 contract five days after work began); *Klink v. Commonwealth*, 407 S.E.2d 5, 7-8 (Va. Ct. App. 1991) (reversing conviction for absence of any evidence that

contractor entered into agreement for $1275 project with fraudulent intent). Even were we to consider these cases persuasive, we note that unlike Virginia's statute,[4] Vermont's home-improvement-fraud law permits conviction if the defendant knowingly promised performance he "does not intend to perform or knows will not be performed, in whole or *in part.*" 13 V.S.A. § 2029(b)(1) (emphasis added). This language suggests that substantial performance is not a complete defense to home improvement fraud in Vermont.

■ ¶ 17. Defendant's alternate theory — that homeowners sufficiently changed the terms of the November 2006 contract such that his actions over the summer could not provide any evidence as to his intent under the original contract — also fails. Defendant never seriously suggests that the pace or quality of his work changed due to husband's decision to purchase supplies from New York. Moreover, any change in the sourcing of materials or the selection or payment of a few subcontractors does not alter the fact that defendant accepted significant monies from homeowners shortly before leaving the job and cutting off communication. The State produced sufficient evidence to enable a jury to find beyond a reasonable doubt that defendant had no intention of performing the contract.

## II.

¶ 18. Defendant next claims that the trial court erred in issuing the permissive inference instruction based on the home-improvement-fraud statute. He argues the State failed to prove the basic facts giving rise to the inference, and thus, instructing the jury that they could use the inference was improper, violated

---

[4]     If any person obtain from another an advance of money, merchandise or other thing, of value, with fraudulent intent, upon a promise to perform construction, removal, repair or improvement of any building or structure permanently annexed to real property, or any other improvements to such real property, including horticulture, nursery or forest products, and fail or refuse to perform such promise, and also fail to substantially make good such advance, he shall be deemed guilty of the larceny of such money, merchandise or other thing if he fails to return such advance within fifteen days of a request to do so sent by certified mail, return receipt requested, to his last known address or to the address listed in the contract.

Va. Code Ann. § 18.2-200.1.

Rule 303(b), and deprived him of his due process rights. Additionally, he argues that the trial court's misstatement of the elements underlying the inference impermissibly lowered the prosecution's burden of proof. We agree and accordingly reverse.

¶ 19. Before addressing the merits of defendant's argument, we must determine if this issue was preserved. Defendant concedes that, contrary to the dictates of Vermont Rule of Criminal Procedure 30, as interpreted by our case law, he did not make "a succinct recitation of [his] specific itemized objections" to the language of the inference instruction *after* it was given to the jury. *State v. Wheelock*, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992); see also V.R.Cr.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."). Our precedent makes clear that we require such a clear and concise recitation "to understand what defendant intended to preserve for appeal." *Wheelock*, 158 Vt. at 306, 609 A.2d at 975. Absent such an objection, any claim of error is waived, and we must review any appealed issue under a plain error standard. E.g., *State v. Wright*, 154 Vt. 512, 520, 581 A.2d 720, 725-26 (1989).

¶ 20. Confronted with this clear precedent, defendant argues that " 'fairness' may dictate that an appellate court consider preserved a defendant's objection to a charge" and cites to our decision in *State v. Bacon* for support. 163 Vt. 279, 658 A.2d 54 (1995). This argument fails. Our decision in *Bacon* is bound by its facts, principally that we had clarified the requirements of Criminal Rule 30 in *Wheelock*, a decision that issued just two weeks before the jury in *Bacon* began deliberation. *Bacon*, 163 Vt. at 285, 658 A.2d at 59. Furthermore, it is not clear from the transcript that defendant objected to the permissive inference during the charging conference on all the same grounds he now raises on appeal. However, that uncertainty is of no moment as we conclude giving the instruction — on the facts at hand and as worded — was plain error.

¶ 21. The language of the permissive inference from 13 V.S.A. § 2029(c) reads:

> It shall be a permissive inference that the person acted knowingly under subdivision (b)(1) of this section [defendant enters into a contract and knowingly promises per-

formance that he or she does not intend to perform or knows will not be performed, in whole or in part] if the person fails to perform the contract or agreement and, when the owner requests performance of the contract or agreement or a refund of payments made, the person fails to:

(1) return the payments or deliver the materials or make and comply with a reasonable written repayment plan for the return of the payments; or

(2) make and comply with a reasonable written plan for completion of the contract or agreement.

Parsing this less-than-clear statute, we conclude that in order to rely on this inference the State had to prove that defendant: (a) failed to perform the contract; and (b) upon the homeowners' request for performance; (c) defendant either (1) failed to return payments or failed to deliver materials or failed to make and comply with a repayment plan, or (2) failed to make and comply with a plan to complete the contract. Only upon presentation of evidence tending to prove these basic facts, (a), (b), and either (c)(1) or (c)(2), was use of the inference language proper.

■■■ ¶ 22. Based on this statutory language, the trial court instructed the jury as follows:

With regard to the [knowingly promising performance] essential element, you may, but need not, infer that [defendant] acted knowingly if he, one, failed to perform the contract or agreement; and when the owner re-quested performance of the contract or agreement or a refund of payments made, [defendant] failed to return the payments or deliver the materials; or, two, failed to make and comply with a reasonable written repayment plan for the return of payments or to make and comply with a reasonable written plan for completion of a contract or agreement. Again, you may draw this infer-ence, but you are not required to do so.

In reviewing a challenge to a jury charge, we do not read the instructions "piecemeal" but take them as a whole to determine if

they "breathe[] the true spirit of the law, and if there is no fair ground to say that the jury has been misled." *State v. Dusablon*, 142 Vt. 95, 98, 453 A.2d 79, 81 (1982) (quotation omitted). If so, we allow the charge to stand. *Id.* Assessing the jury instruction at issue in this case, we conclude it constitutes error for two reasons. First, the court erred in instructing the jury on the permissive inference because there was insufficient evidence to support such an instruction. Second, as charged, the jury instruction misstated the law and in so doing permitted the jury to infer an element of the crime based on a lower standard than the statute demands.

¶ 23. Inferences in the law operate in two related ways.[5] The first is to permit the State to survive a motion for judgment of acquittal and submit its case against the defendant to a jury.[6] The second is to allow the court to specifically instruct the jury on the inference, highlighting its existence and expressly permitting the jury to rely on it. It is the second use that is the focal point of this discussion. Our Rules of Evidence, adhering to constitutional standards, allow an inference to operate against a criminal defendant if it is permissive — i.e. the trier of fact may discount it — and it is based "upon sufficient evidence of the basic fact" required to find the presumed fact. V.R.E. 303(b); see *State v. McBurney*, 145 Vt. 201, 205, 484 A.2d 926, 928 (1984) (noting permissive inference, unlike mandatory inference, permits but does not require trier of fact to find presumed fact and thus places no unconstitutional burden on defendant); see also *Ulster County Court v. Allen*, 442 U.S. 140, 156-57 (1979). Any such permissive inference "may serve to support a jury's finding of guilt beyond a reasonable doubt only if there is a logical and convincing connection between the facts established and the conclusion inferred." *State v. Bleau*, 139 Vt. 305, 309, 428 A.2d 1097, 1099 (1981) (quotation omitted).

---

[5] We note that, although Rule of Evidence 303 refers to "presumptions," the Reporter's Notes more aptly "treats presumptions against the accused as permissive inferences." Reporter's Notes, V.R.E. 303. An inference is a "conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary 781 (7th ed. 1999). A presumption, on the other hand, is an "assumption that a fact exists." *Id.* at 1203.

[6] In the instant case, however, the State did not rely on the presumption in rebutting defendant's motion for judgment of acquittal, and the presumption did not play a role in the trial court's denial of that motion.

■■ ■■ ¶ 24. In order for the court to instruct the jury on a permissive inference, it must first determine the nature and legal effect of the presumed fact that would be found as a result of the inference. Rule 303(c) distinguishes between a presumed fact that "establishes guilt or is an element of the offense" and a fact that "has a lesser effect." V.R.E. 303(c). Identifying this distinction enables the trial court to determine the standard of proof for submitting an instruction on the inference. The rule states that for the weightier elemental facts, such as whether defendant acted knowingly, the element at issue here, "the court may submit the question of guilt or the existence of the presumed fact to the jury, but only if a reasonable juror on the evidence as a whole, including the evidence of the basic fact, could find guilt or the presumed fact beyond a reasonable doubt." V.R.E. 303(c). The language of the rule on this issue is not the paragon of clarity, but reviewing it along with the entirety of the rule and other persuasive sources convinces us that the rule requires proof of the basic fact beyond a reasonable doubt before the court may submit a specific instruction on the permissive inference to the jury.

■■ ¶ 25. We recognize that, to satisfy the mandates of due process under the Federal Constitution, a permissive inference "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Allen*, 442 U.S. at 156. Vermont's rule embodies this federal standard by mandating that the trial court may instruct the jury on the permissive inference only if a reasonable juror could find the presumed fact beyond a reasonable doubt when considering all the evidence, including evidence of the basic fact. The Reporter's Notes describe this approach as "similar to that applied in determining a motion for judgment of acquittal." Reporter's Notes, V.R.E. 303. Indeed, our standard is higher than the rational connection required for an inference to pass constitutional muster. Cf. *Allen*, 442 U.S. at 157 (recognizing that permissive inference has impact on reasonable doubt standard "only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference"). This constitutional standard is akin to the test for evidentiary relevance, whereas Rule 303 requires a showing that a reasonable juror could find the fact beyond a reasonable doubt. See Reporter's Notes, V.R.E. 303; see also *State v. Goyette*, 156 Vt. 591, 601, 594 A.2d 432, 438 (1991) (upholding jury instruction which in-

cluded requirement that jury "decide beyond a reasonable doubt" that basic facts exist before considering inference). Such an understanding comports with the requirements of our criminal law — that in order for a jury to convict, it must unanimously find each element of a crime beyond a reasonable doubt. See *State v. Baker*, 154 Vt. 411, 414, 579 A.2d 479, 480 (1990); see also *In re Winship*, 397 U.S. 358, 364 (1970).

¶ 26. The whole of Rule 303 supports this reading. In contrast to the submission requirements for an elemental fact, the rule permits the inference of lesser facts to be submitted to the jury "provided the basic fact is supported by substantial evidence or is otherwise established." V.R.E. 303(c). As noted above, this standard is similar to the test for the relevance of evidence. It is illogical that the rule would require a lower standard of proof for elemental inferences than it would for lesser facts. Were the standards for both types of inferences meant to be the same, there would be no reason to distinguish between them. The only logical conclusion is that elemental facts must pass the more stringent reasonable doubt standard. Cf. Haw. Rev. Stat. § 626-1, Rule 306(a)(3) (lacking distinction between types of presumed facts because "[w]henever a presumption against the accused is submitted to the jury, the court shall instruct the jury that, if it finds the basic facts beyond a reasonable doubt, it may infer the presumed fact but is not required to do so"); Or. Rev. Stat. § 40.125 (for elemental facts, "the judge may submit the question of guilt or the existence of the presumed fact to the jury only if . . . [a] reasonable juror on the evidence as a whole could find that the facts giving rise to the presumed fact have been established beyond a reasonable doubt").

¶ 27. Other persuasive sources support our adoption of a beyond-a-reasonable-doubt standard for finding basic facts supporting a permissive inference of elemental facts in criminal cases. The source of Rule 303 is Uniform Rule 303(b), which was never included in the Federal Rules of Evidence. See Reporter's Notes, V.R.E. 303. In analyzing Uniform Rule 303, a leading treatise on evidence is unequivocal about the standard of proof for basic facts giving rise to inferred elemental facts: "in order to have the jury instructed that they can infer the presumed [elemental] fact from the basic fact alone, the prosecution must introduce sufficient evidence that a reasonable jury could find the basic fact to have

been proved beyond a reasonable doubt." 21B C. Wright & K. Graham, Federal Practice & Procedure § 5145, at 794 (2d ed. 2005); see also 1 J. McLaughlin, Weinstein's Federal Evidence § 303.10[5], at 303-64 to 303-65 (2d ed. 1997) (recommending use of reasonable doubt standard for proof of basic facts as being "safer course"). Several sister jurisdictions have adopted this standard when interpreting their versions of Rule 303, which are also based on Uniform Rule 303 and are identical, in relevant part, to Vermont's Rule 303. In determining the burden of proof the rule requires, the Supreme Court of New Mexico recognized that the basic facts giving rise to the presumption *and* the ultimate fact must be proven beyond a reasonable doubt. *State v. Trossman*, 2009-NMSC-34, ¶ 14, 212 P.3d 350.[7] This rationale in *Trossman* necessitated vacating the defendant's conviction "where there was a possibility that the jury could have convicted her without finding each of the elements of the crime charged beyond a reasonable doubt." *Id.* Likewise, the Supreme Court of South Dakota held that "[t]he jury must be able to find the basic fact proven beyond a reasonable doubt before they may be instructed that they can infer the presumed fact from the basic fact alone." *State v. McDonald*, 421 N.W.2d 492, 496 (S.D. 1988) (quotation omitted).[8] Relevant to our analysis here, the court in *McDonald* noted that "[i]f the basic fact has not been proven beyond a reasonable doubt, it may still be considered along with other evidence, but no instruction can be given to aid in proving the presumed fact." *Id.* at 496. These two cases highlight the import of our ruling: if the State fails to prove the basic facts giving rise to a permissive inference beyond a reasonable doubt, the case may still proceed to

---

[7] In relevant part, the New Mexico Rule of Evidence at issue, Rule 11-302, reads:

B. Submission to Jury. The court is not authorized to direct the jury to find a presumed fact against the accused. When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. When the presumed fact has a lesser effect, its existence may be submitted to the jury if the basic facts are supported by substantial evidence, or are otherwise established, unless the evidence as a whole negatives the existence of the presumed fact.

[8] As with Vermont's Rule 303 and New Mexico's relevant rule of evidence, South Dakota's rule is also based on Uniform Rule 303. See *id.* at 495.

the jury, but the State is not entitled to an instruction on the inference.

¶ 28. In response to this result, the State suggests an alternate reading of Rule 303. It contends that the language of the rule allows the trial court to instruct the jury on the permissive inference only if a reasonable juror could find the presumed fact beyond a reasonable doubt when considering all the evidence together, which includes evidence of the basic fact. When, as here, the evidence as a whole can support a guilty verdict, the State argues there is no need to find the basic fact beyond a reasonable doubt. Such a standard, the State suggests, meets the constitutional threshold. See *Allen*, 442 U.S. at 167 (observing prosecution "may rely on all of the evidence in the record to meet the reasonable-doubt standard" when employing a permissive inference); *Bleau*, 139 Vt. at 309, 428 A.2d at 1099. This interpretation of Rule 303 is flawed. It would permit the court to instruct the jury on an inference based on the strength of the entire case, even if the evidence of the basic fact, which justified the instruction in the first place, was weak. This creates the danger that a jury could discount ample general evidence — perhaps due to a perceived lack of witness credibility — but still convict the defendant because the jury instructions permitted the inference on an essential element which was based only on the weak evidence. See 21B Wright & Graham, *supra*, § 5145, at 792-93 n.41 (providing example). Under such circumstances, the defendant would have been convicted of a crime based on evidence of guilt which the State did not prove beyond a reasonable doubt.

¶ 29. Upon the testimony put forth at the trial below, the court had no basis to believe the State had proven beyond a reasonable doubt that homeowners had requested performance of the contract, a basic fact necessary for instructing on the statutory inference in 13 V.S.A. § 2029. Husband testified that he made repeated calls to defendant to set up a meeting and got no response — he never stated he requested performance. The one piece of evidence the State offers to bolster its claim is a single sentence of testimony: wife's reply on cross-examination wherein she stated, "We contacted him several times to ask him to complete the work [before cancelling the contract]." She did not testify that actual contact was made. The State's proffered testimony does not suggest that homeowners ever actually requested defendant perform on the contract or refund their money before

they severed their relationship. There is thus no evidence to permit instructing the jury on the permissive inference. Cf. *McBurney*, 145 Vt. at 206, 484 A.2d at 929 (detailing evidence supporting permissive inference instruction).

¶ 30. Beyond the lack of sufficient evidentiary support, the instruction as given was flawed. The permissive inference is available to a jury for determining if a defendant acted knowingly if the defendant: failed to perform the contract and upon the homeowner's request for performance of the contract or a refund of payments either, "one," failed to return payments or failed to deliver materials or failed to make and comply with a repayment plan or, "two," failed to make and comply with a plan to complete the contract. See *supra*, ¶ 21. The jury instruction, however, placed the word "one" a few phrases too early, thus misstating the standard for the inference. As given, the instruction allowed the jury to infer defendant's knowledge of his intent not to perform if they found only that defendant "failed to make and comply with a reasonable written repayment plan for the return of payments or to make and comply with a reasonable written plan for completion of a contract or agreement." See *supra*, ¶ 22. Such an instruction eliminated the statutory elements that defendant knowingly promised performance he knew would not be performed and that homeowners requested performance or a refund. Because of this error, the jury may have convicted defendant contrary to the dictates of the statute.[9]

¶ 31. We next must determine if the above-recognized error was plain. See *State v. Lambert*, 2003 VT 28 ¶ 13, 175 Vt. 275, 830

---

[9] We also note a potential third flaw in the instructions, one not raised by defendant. Under Rule 303(d), "if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court *shall* instruct the jury that its existence on all the evidence, must be proved beyond a reasonable doubt." (Emphasis added.) This rule demands an additional reasonable doubt instruction be included alongside the presumption instruction highlighting the State's burden, over and above the general burden instruction. See *Goyette*, 156 Vt. at 602, 594 A.2d at 438. The parties did not request and the trial court did not provide such an instruction here. Cf., e.g., *id.* at 600-02, 594 A.2d at 437-39 (affirming appropriate inference instruction including "repeated[] instruct[ion] . . . that State had to prove each element of the charged crime . . . beyond a reasonable doubt"); see also *Brackeen v. State*, 763 P.2d 59, 62 (Nev. 1988) (per curiam) (finding violation of rule of evidence essentially identical to Rule 303(d) where jury given only "general instruction" on state's burden of proof and never charged with finding presumed fact beyond reasonable doubt).

A.2d 9 (rejecting argument that flawed jury instruction was error per se). We rely on four factors to determine plain error: "First, there must be an error; second, the error must be obvious; and third, it must affect substantial rights and result in prejudice to the defendant." *State v. Yoh*, 2006 VT 49A, ¶ 39, 180 Vt. 317, 910 A.2d 853; see *Lambert*, 2003 VT 28, ¶ 14 (noting claimed error in jury instructions "must not only affect substantial rights, but also have an unfair prejudicial impact on the jury's deliberations" (quotation omitted)). Finally, we must correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Yoh*, 2006 VT 49A, ¶ 39 (quotation omitted). In reviewing possible error in a jury instruction, we "look at the instructions in light of the record evidence as a whole" and determine if any error "would result in a miscarriage of justice." *Lambert*, 2003 VT 28, ¶ 14. Though we find such error only in "extraordinary cases," *State v. Brooks*, 163 Vt. 245, 250, 658 A.2d 22, 26 (1995), our standard is met in this case.

¶ 32. As explained fully above, the permissive inference instruction should not have been given because it lacked evidentiary support and did not correctly state the law. By permitting the inference without sufficient proof and lowering the evidentiary threshold for a finding of guilt on an element of the crime, the instructions violated defendant's right to a verdict based upon proof beyond a reasonable doubt. Moreover, the jury instructions failed to correctly state the law. See *State v. Gokey*, 136 Vt. 33, 36, 383 A.2d 601, 603 (1978) (holding that a jury instruction that was "not only incorrect at law but also tended to mislead and confuse the jury, resulting in a failure to amply protect the defendant's rights" required reversal of defendant's conviction). This makes the error obvious. See *State v. Koons*, 2011 VT 22, ¶ 13, 189 Vt. 285, 20 A.3d 662 (noting plain error must be "one that is clear or obvious under existing law"); *State v. Goyette*, 166 Vt. 299, 304, 691 A.2d 1064, 1067 (1997) (recognizing reversible error where, "[a]lthough the alleged acts, taken together, could have supported the jury's verdict, the court's instruction required far less to convict defendant"). Read as a whole, the instructions do not correct such error.

¶ 33. We find this erroneous instruction prejudicial because it directly undermined defendant's case without providing him an opportunity to respond. The central component of the home-improvement-fraud charge was the mental element: that defendant

entered into the contract and *knowingly* promised performance he did not intend to provide. Thus, the State's case focused on evidence — entirely circumstantial — of defendant's intent in entering the contract; its theory suggested he bilked homeowners for payments and did only enough work to keep them paying him, walking away when he felt he could get no more. Defendant responded with contrary examples. He made much of his actual performance under the contract, the lack of any clear timeline for completion of his work, and later changes to other contract terms. His cross-examination of husband focused on the total cost of the work defendant had performed and the lack of any real financial gain for defendant in walking off the job given his expenditure in terms of materials and labor. Most importantly, defendant focused on the absence of evidence showing his intent when entering into the contract. In both his opening and closing statements he highlighted the State's failure to "present[] any credible evidence to suggest that [defendant] had any fraudulent intent in any of these dealings," specifically that there was not "a shred of evidence to indicate that [defendant] had any intent to defraud [homeowners] when he entered this business relationship." "The law is intent[,]" defendant emphasized, "not . . . that it's somehow against the law to walk off a job." The instruction as given allowed the jury to look past defendant's theory and infer his criminal intent based on insufficient or nonexistent evidence, all to his direct prejudice. The crime at issue involved knowingly promising performance defendant knew would not be performed, not failing to make and comply with a reasonably written repayment plan or plan for completion of the contract as the instruction suggested.[10]

¶ 34. Finally, we consider whether this instruction seriously affected the integrity of the jury verdict. The State's evidence proving defendant's intent was largely circumstantial and relied on numerous inferences. If the jury relied on the erroneous inference in determining the knowledge element of the crime, it failed to find defendant guilty of all elements of the crime beyond a reasonable doubt. Moreover, if the jury merely found defendant

---

[10] We note that affirming the trial court's denial of defendant's motion for judgment of acquittal is not contradictory to our holding here. There, our standard of review requires us to affirm given any reasonable basis for a conviction on all of the evidence. Moreover, in originally ruling on the motion, the trial court did not take the flawed jury instructions into account.

had neither made a repayment plan nor a plan to complete the contract — facts never suggested at trial — and inferred his knowledge from such a flawed premise, his conviction may rest on improper and unconstitutional grounds. In essence, the instruction provided the jury a path to convict defendant that was not supported by the evidence and was contrary to the statute's dictates. In an earlier decision finding error in the use of an inference in the jury charge, we adopted the United States Supreme Court's analysis from *Connecticut v. Johnson*, 460 U.S. 73 (1983):

> "An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence. If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made."

*State v. Martell*, 143 Vt. 275, 279, 465 A.2d 1346, 1348 (1983) (quoting *Johnson*, 460 U.S. at 85-86). We again find this analysis persuasive. By allowing the jury to infer defendant's intent by way of an instruction that should never have been given and failed to announce the proper standard, the jury "may have relied upon the presumption rather than upon the evidence" and thus convicted defendant based on a standard less rigorous than the Constitution or the statute at issue require. Because the errors could have affected the jury's deliberation, and we cannot know what they decided or how they decided it, we find plain error in this instruction.

¶ 35. The State, relying on *Lambert* and related cases, attempts to suggest that any error here was harmless. We do not agree. First, plain error is a more searching standard than harmless error, and we have detailed the prejudice this instruction engendered. Secondly, reliance on *Lambert* is misplaced. At issue

in *Lambert* was the trial court's failure to instruct the jury on an element of the charged crime. We recognized that because the element was "not seriously at issue," the defendant failed to prove plain error. *Lambert,* 2003 VT 28, ¶ 15. In contrast, here the element of knowledge was *the* issue. Because of our determination of this claim, we need not reach defendant's constitutional challenge to the statute.

*Conviction on Count One is vacated, and the cause is remanded.*