NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 5

No. 2019-271

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Criminal Division |
| | |
| Chad G. Spencer | June Term, 2020 |

Michael J. Harris, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua O'Hara, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Defendant Chad Spencer appeals his conviction of resisting arrest following a jury trial. He argues that the superior court erred when it instructed jurors that whether he was read Miranda rights was irrelevant to their consideration of the charge. We clarify the relevance of Miranda warnings to the resisting-arrest offense and hold on evidentiary grounds that there was no error in this case.

¶ 2. The State introduced the following evidence at trial. In February 2018, three uniformed state troopers were dispatched to serve a relief-from-abuse order on defendant. The officers knocked on defendant's front door, which defendant opened. When the troopers explained their purpose, defendant became angry and stormed off inside the house. Because their practice

was to read the order to the recipient and obtain the latter's signature on a return of service, the troopers asked defendant whether they could enter the home. When defendant consented, the officers followed him inside.

¶ 3. There, defendant became increasingly agitated and started yelling and swearing at the officers. At one point, defendant moved quickly and aggressively towards one of the troopers, who thought he was being attacked. The other officers interceded and the three tried to arrest defendant for assaulting an officer. They commanded defendant to get on the ground and put his hands behind his back. Defendant did not comply. They also tried to pull defendant's arms behind him, but defendant pulled away and tried to keep his arms on his chest. After the officers handcuffed him, defendant continued to pull away, kicked an officer in the chin, and was generally uncooperative as the troopers tried to place him inside a police cruiser.

¶ 4. The State charged defendant with resisting arrest in violation of 13 V.S.A. § 3017(a)(1) and simple assault on a protected professional under 13 V.S.A. § 1028(a)(1). The three officers testified at trial, as did defendant's partner and mother, who witnessed some of the events at issue. Neither party asked the witnesses whether the officers read defendant Miranda warnings, and thus no evidence was introduced on the subject.

¶ 5. The court instructed the jury on the elements of the offenses. It explained that to find defendant guilty of resisting arrest, the jury had to find that he "attempted to prevent a lawful arrest on himself"; "acted with the intent to prevent the lawful arrest"; and "at the time, it reasonably appeared that the person attempting the arrest was a law enforcement officer." It explained that for defendant to have acted intentionally, "he must have acted purposely, with the conscious objective of preventing the lawful arrest," and "voluntarily, . . . not inadvertently or because of mistake or by accident." The court also instructed that "a person's intent may be shown by the way in which the person expresses it to others or by his conduct," and that to determine

2

defendant's intent, the jury "should consider all of the surrounding facts and circumstances established by the evidence."

¶ 6. The jury deliberated for some time before submitting three written questions to the court: (1) "Does one have to say, 'You are under arrest'?" (2) "Was he told, 'You are under arrest'?" (3) "Did they read his Miranda rights?" The court conferred with the parties on appropriate answers outside the jury's presence. Everyone agreed that in answer to the first question, the jury would be told that the officers were not required to tell defendant that he was under arrest. Everyone also agreed that the answer to the second question would be that whether defendant was told "you are under arrest" was a factual question for the jury to decide based on the evidence, but that the jury should consider the answer to the first question. The court and the State agreed that the answer to the third question should be that the provision of Miranda warnings was irrelevant to any issue before the jury. Defendant disagreed several times, arguing that whether he was read Miranda warnings was also a question of fact for the jury to decide based on the evidence. Defendant insisted that the court did not know why the jury was asking about Miranda rights and that "it could be relevant to one" of the issues in the case. When the court ruled that it would instruct the jury that Miranda warnings were not relevant, defendant did not object. The court instructed the jury as agreed on questions one and two. In response to the third question, the court answered, "This question is not relevant to the issues for you to decide in this case." Defendant again did not object. The jury deliberated further and found defendant guilty of resisting arrest and not guilty of simple assault on a protected professional.

¶ 7. On appeal, defendant argues that the court erred in answering the third question because the Miranda issue was relevant to his intent and to the concurrence of his intent to the other elements of the resisting-arrest offense. The argument proceeds as follows: Members of the public associate Miranda warnings with the process of arresting a person. Whether a person was read Miranda rights during the process of arrest is thus relevant to whether the person knew he

3

was being arrested and therefore acted with the intent to resist the arrest. If the jury had been allowed to consider whether he had been read Miranda rights as the officers were trying to arrest him, the jury might have concluded that, absent the warnings, he did not know he was being arrested and thus did not act intentionally in resisting the arrest.

¶ 8. At the threshold, defendant's argument was not preserved for appeal. "To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). So, too, with alleged errors in jury instructions, including supplemental instructions. See State v. Rideout, 2007 VT 59A, ¶ 16, 182 Vt. 113, 933 A.2d 706. At no point did defendant object to the court's proposed answer to the third question, and defendant's argument that the question "could be relevant to one" of the issues in the case was neither specific nor clear. Our review is accordingly only for plain error, State v. Bellanger, 2018 VT 13, ¶ 12, 206 Vt. 489, 183 A.3d 550, which we find if there was an error, the error was obvious, the error affected substantial rights and resulted in prejudice to the defendant, and the error seriously affected "the fairness, integrity, or public reputation of judicial proceedings." State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. "In reviewing a challenge to a jury charge, we do not read the instructions piecemeal but take them as a whole to determine if they breathe the true spirit of the law, and if there is no fair ground to say that the jury has been misled." State v. Rounds, 2011 VT 39, ¶ 22, 189 Vt. 447, 22 A.3d 477 (quotations and alteration omitted).

¶ 9. Defendant's argument raises two issues: First, whether the provision of Miranda warnings is relevant to whether a person knows that the police are attempting to place him under arrest, and therefore relevant to whether the person acts with the intent to resist arrest. Second, if the answer to the first question is in the affirmative, whether the court here committed plain error in instructing the jury that the Miranda issue was irrelevant, even though no evidence was introduced on the subject. We address each in turn.

4

¶ 10.    It is settled that "to effect an arrest, the officer must, in some unequivocal manner, acquire and exercise control of the person whom it is sought to arrest" and that "absent a touching or other restraint, submission is required to perfect an arrest." State v. Blaine, 133 Vt. 345, 351, 341 A.2d 16, 20 (1975) (quotations omitted) (holding that arrest was not completed when there was no touching, restraint, or submission); see also California v. Hodari D., 499 U.S. 621, 624, 626 (1991) (holding that an arrest requires either "grasping or application of physical force with lawful authority, whether or not it succeed[s] in subduing the arrestee" or "submission to the assertion of authority" (emphasis omitted)).  A person commits the offense of resisting arrest if he "intentionally attempts to prevent a lawful arrest on himself . . . , which is being effected or attempted by a law enforcement officer, when it would reasonably appear that the latter is a law enforcement officer." 13 V.S.A. § 3017(a).  A person acts intentionally when " 'it is his conscious object to engage in conduct of that nature or to cause such a result.' " State v. Jackowski, 2006 VT 119, ¶¶ 5-6, 181 Vt. 73, 915 A.2d 767 (quoting Model Penal Code § 2.02(2)(a)(i)) (noting that "intentionally" is synonymous with "purposely").  Intent, we have often explained, " 'is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence.' " State v. Theriault, 2014 VT 119, ¶ 7, 198 Vt. 625, 109 A.3d 448 (mem.) (quoting State v. Johnson, 2013 VT 116, ¶ 29, 195 Vt. 498, 90 A.3d 874).

¶ 11.    In Miranda v. Arizona, the U.S. Supreme Court held that to protect the people's Fifth Amendment privilege against self-incrimination, prior to custodial interrogation, the police must warn suspects of their right to remain silent and of their right to have an attorney present. 384 U.S. 436, 444 (1966).  Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. (emphasis added).  Thus, a police officer need not recite Miranda rights as she is effecting or attempting to effect an arrest.  But it is certainly possible that an officer might choose to deliver the warnings at that time.  In such a case, we agree with

5

courts that have held that the warnings can indicate to members of the public that they are being arrested. See, e.g., Caldwell v. State, 41 So. 3d 188, 202-03 & n.8 (Fla. 2010) (explaining that "it is not unreasonable to conclude that an individual who is given Miranda warnings during what begins as a consensual encounter may interpret those warnings as a restraint on his or her freedom," and noting that defendant asked why he was being arrested immediately after Miranda warnings were provided); see also State v. Green, 575 A.2d 1308, 1314 (N.H. 1990) (noting that "the reading of Miranda warnings may be a factor in deciding whether a person is in custody under some circumstances"); State v. Charles, 331 P.3d 1012, 1016 (Or. Ct. App. 2014) (holding, in context of police stops, that "the officer's giving of Miranda warnings is a factor to be considered in determining whether the officer's actions conveyed a restraint on defendant's liberty").

¶ 12. The U.S. Supreme Court has held that " '[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " Hodari, 499 U.S. at 627-28 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980) (plurality opinion)). An arrest, the Court further explained, is the quintessential seizure of the person under the Fourth Amendment. Id. at 624. In light of this law, if an officer happens to recite Miranda warnings to a person as she is effecting or attempting to effect an arrest, a reasonable person could conclude, on that and other bases, that the officer is effecting or attempting to effect an arrest. Aware that an arrest is in progress, the suspect might then act intentionally to resist the arrest. To that extent, a factfinder can consider the presence or absence of Miranda warnings as one of many factors bearing on the defendant's intent to resist arrest.

¶ 13. Nevertheless, we find no error in the trial court's elimination of the Miranda issue from this jury's consideration because no evidence was introduced at trial regarding whether defendant was read Miranda warnings, and the evidence introduced could not support a reasonable, nonspeculative inference that the warnings were not provided.

¶ 14.     As noted, neither party asked the witnesses whether the officers read defendant Miranda warnings at any point during their interaction.  Accordingly, for the jury to have found that defendant was not read Miranda rights, it would have had to do so based on a reasonable, nonspeculative inference drawn from other evidence.  "A factfinder may draw rational inferences to determine whether disputed ultimate facts occurred, but those inferences must add up to more than mere suspicion, and the factfinder cannot bridge evidentiary gaps with speculation."  State v. Wisowaty, 2015 VT 97, ¶ 16, 200 Vt. 24, 128 A.3d 876 (quotations and alteration omitted).  Thus, for example, where neither a landlord nor his tenants testified that the tenants agreed to pay rent once a building was code compliant, and the inference could not arise from other testimony or surrounding circumstances, the trial court's finding to that effect strayed from rational inference into impermissible speculation.  Kwon v. Edson, 2019 VT 59, ¶ 26, __ Vt. __, 217 A.3d 935.  And where no evidence was introduced concerning whether a driver worked on certain days for which he did not submit vehicle inspection reports, the absence of those reports did not support an administrative review board's finding that the employer company was on constructive notice of "something amiss" with the vehicle.  Comm'r of Labor v. Eustis Cable Enters., LTD, 2019 VT 2, ¶ 10, 209 Vt. 400, 206 A.3d 1260.

¶ 15.     Here, the parties asked the witnesses specific questions about what happened at particular points of the interaction.  They even asked the officers what commands they gave defendant at certain times.  But none of the witnesses provided a step-by-step narrative of the exact actions and statements of the officers during the incident.  Had they done so, we would have to consider whether the jury could have found, based on the omission of Miranda warnings from a complete narrative of events, that the rights were not in fact recited.  But without direct testimony that defendant was not read Miranda rights, and without the omission of Miranda rights from a comprehensive narrative of events, it would have been mere speculation to have found that defendant was not read Miranda warnings.  It is possible that the officers read the warnings at

some relevant point but no witness volunteered the testimony because the witnesses were not asked a question on the subject nor did they describe all the events in detailed, narrative form. Simply put, had the court instructed jurors to look to the evidence to decide whether defendant was read Miranda warnings, it would have invited them to bridge an evidentiary gap with speculation.

¶ 16. The court accurately instructed the jury on the elements of the resisting-arrest offense, including that defendant must have acted intentionally, meaning he "must have acted purposely, with the conscious objective of preventing the lawful arrest," and "voluntarily, . . . not inadvertently or because of mistake or by accident." The court also correctly instructed that "a person's intent may be shown by the way in which the person expresses it to others or by his conduct," and that to determine defendant's intent, the jury "should consider all of the surrounding facts and circumstances established by the evidence." The jury's finding—reflected in the guilty verdict—that defendant acted intentionally is supported by evidence that three uniformed police officers commanded defendant to get on the ground and put his hands behind his back, and defendant did not comply and pulled away. There was no error, let alone plain error.

Affirmed.

FOR THE COURT:

_____
Associate Justice

8