NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 10

No. 22-AP-334

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Scott Phillips | September Term, 2023 |

Cortland Corsones, J.

Alexander Burke, State's Attorney's Office, Bennington, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and A. Alexander Donn, Appellate Defender, Montpelier,
  for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **WAPLES, J.** Defendant Scott Phillips challenges the criminal division's denial of his motion for judgment of acquittal, its charge to the jury, and its imposition of probation conditions regarding alcohol consumption and prohibition from possessing deadly weapons. He contends that the criminal division erred because a conviction under 13 V.S.A. § 1043(a)(2) requires the State to prove that he threatened a household member in addition to having used or attempted to use a deadly weapon on them. Defendant further argues that the criminal division's interpretation of the statute led to improper jury instructions and that the court at sentencing imposed unreasonable and irrelevant probation conditions. Because we conclude there is no error in the criminal division's interpretation of the statute, its charge to the jury, or its imposition of the challenged probation conditions, we affirm.

## I. Factual Background

¶ 2.    The criminal division made the following findings in ruling on defendant's motion for judgment of acquittal. This case arises out of a domestic-violence incident that occurred on October 9, 2019. Complainant and defendant both worked as managers at a grocery chain and began dating in May of 2019. Defendant moved into complainant's home in June of 2019. On the day of the assault, complainant arrived home from work after defendant, who was preparing dinner. Complainant testified that defendant had been drinking. While conversing, complainant asked defendant "if he would like me better if I was thinner." Defendant said that he would.

¶ 3.    Feeling hurt by defendant's comments, complainant retreated to the closet to fold laundry for roughly half an hour. Complainant returned to the living room adjacent to the kitchen where defendant was preparing dinner and began watching television. The two engaged in a tense conversation regarding dinner. Defendant then slammed the door to the freezer, knocking several items off the top of the refrigerator.

¶ 4.    At that point, complainant got up and told defendant to leave and he replied that complainant should leave. Complainant told defendant to "get the fuck out of my house!" and defendant began agitatedly running around the room and getting "in [complainant's] face." He then pulled complainant into a chokehold and pressed her up against the couch to immobilize her. Defendant restricted complainant's breathing to the point where she could not tell him to stop. Complainant struggled until defendant flung her onto the ground where she landed on a wire basket.

¶ 5.    Complainant then got up and called 911 while walking down the hall to get away from defendant. She heard defendant throw something, and upon turning around, she realized defendant had launched an eight-inch carving knife in her direction. Defendant had thrown the knife with enough force that the blade broke off, leaving the handle stuck into the wall less than a foot from the entrance to the hallway where complainant was standing. Defendant left the house

2

in a car and arrived at the Bennington Police Department later that night where he was interviewed by police and arrested. Bennington Police determined defendant's blood alcohol level to be 0.078 at the time of arrest.

¶ 6. Defendant was charged with three counts—Count I: willfully causing serious bodily injury to a household member pursuant to 13 V.S.A. § 1043(a)(1); Count II: attempting to use or being armed with a deadly weapon and threatening to use the deadly weapon on a household member in violation of 13 V.S.A. § 1043(a)(2); and Count III: willfully or recklessly causing bodily injury to a household member in violation of 13 V.S.A. § 1042. After trial, the jury returned a guilty verdict on Counts II and III. The jury found defendant not guilty of Count I. Defendant filed posttrial motions for a judgment of acquittal and for a new trial, arguing that the evidence proffered was insufficient to show that defendant used or threatened to use a deadly weapon on complainant or that defendant caused bodily harm to complainant. Defendant also argued that the court erred in failing to provide a unanimity instruction or a special verdict form to the jury, and in declining to provide a self-defense instruction. The court denied both motions.

¶ 7. In denying the motions, the court reasoned that because defendant was the aggressor in the altercation, he was not entitled to a self-defense instruction. The court further determined that its unanimity instruction to the jury was sufficient. Lastly, it concluded that the evidence sufficiently supported the jury's verdict of guilty on both counts. Defendant now appeals, challenging the criminal division's denial of his motion for a directed verdict as to Count II, its instructions to the jury, and probation conditions it imposed, which require substance use screening, prohibit defendant from consuming alcohol "to the extent [it] interfere[s] with [his] employment or the welfare of [his] family," and prohibit him from possessing deadly weapons.

## II. Judgment of Acquittal

¶ 8. We first address defendant's motion for judgment of acquittal. We review the denial of a motion for judgment of acquittal de novo, employing the same standard as the trial

court. State v. Wisowaty, 2015 VT 97, ¶ 13, 200 Vt. 24, 128 A.3d 876. In doing so, we determine "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Perez, 2006 VT 53, ¶ 19, 180 Vt. 388, 912 A.2d 944 (quotation omitted). Nevertheless, this Court will review the trial court's interpretation of a statute, including "[d]etermination of the essential elements of an offense," de novo. State v. Coburn, 2006 VT 31, ¶ 14, 179 Vt. 448, 898 A.2d 128.

¶ 9. Defendant first argues that the criminal division erred in refusing to grant his motion for judgment of acquittal on Count II, couching most of his argument in the court's alleged misinterpretation of 13 V.S.A. § 1043(a)(2), which reads in relevant part:

> (a) A person commits the crime of first degree aggravated domestic assault if the person:
> . . .
> (2) uses, attempts to use, or is armed with a deadly weapon and threatens to use the deadly weapon on a family or household member.

Defendant argues for an interpretation of the statute in which threatening the victim with using the deadly weapon is a necessary element in addition to using, attempting to use, or being armed with a deadly weapon. Defendant contends that because there is no evidence that he threatened complainant with the knife, as her back was turned when he threw it, that the State has failed to provide sufficient evidence for a reasonable jury to convict. We decline to adopt defendant's strained interpretation for a number of reasons.

¶ 10. First, to accept defendant's proffered interpretation of the provision would be to allow for an illogical or absurd result, which we will not sanction. See Jud. Watch, Inc. v. State, 2005 VT 108, ¶ 16, 179 Vt. 214, 892 A.2d 191 ("We have recognized the rule of construction that statutes should not be interpreted to produce absurd or illogical results." (quotation omitted)). To endorse this statutory construction would result in a requirement that the State not only prove that

a defendant used a deadly weapon on a household member, but that there was a threat beforehand. Put differently, it would be possible for a defendant who stabbed a household member in the back to escape conviction under the statute simply because they did not make a threat beforehand. This is an absurd result.

¶ 11. The plain language of the statute clearly illustrates that the Legislature intended to criminalize three distinct actions: (1) using a deadly weapon on a household member; (2) attempting to use a deadly weapon on a household member; or (3) possessing <u>and</u> threatening to use a deadly weapon on a household member. See 13 V.S.A. § 1043(a)(2). Because the touchstone of statutory interpretation is legislative intent as derived from the plain language and because, here, there can be only one reasonable interpretation of the plain language, we decline to adopt defendant's interpretation. See <u>State v. Brunner</u>, 2014 VT 62, ¶¶ 11, 18, 196 Vt. 571, 99 A.3d 1019 (noting that "our goal is to give effect to the intent of the Legislature" by first looking to "the plain, ordinary meaning of the statute," only finding ambiguity where "a statute is capable of more than one reasonable interpretation" (quotation omitted)).

¶ 12. In addition, our previous case law illustrates why the Legislature requires an explicit threat to be convicted of mere possession of a deadly weapon, but not from using or attempting to use that weapon. In <u>State v. Kuzawski</u>, the Court determined that what constitutes a deadly weapon under the statute necessarily relies on the defendant's intent and cannot be determined from possession alone. 2017 VT 118, ¶ 10, 206 Vt. 351, 181 A.3d 62. Unlike an intent element requiring the use or attempt to use a weapon, the specific intent required to prove aggravated domestic assault cannot be determined from possession alone. Compare <u>State v. Watson</u>, No. 2012-308, 2012 WL 6827284, *2 (Vt. Oct. 8, 2012) (unpub. mem.) [https://perma.cc/7Z7N-5ZH4] (noting defendant charged with aggravated domestic assault for using deadly weapon after firing gun where bullet traveled "13 inches from victim") with <u>Kuzawski</u>, 2017 VT 118, ¶ 4 (noting defendant charged with aggravated domestic assault for

threatening victim while possessing knife). Section 1043(a)(2) requires an action by the defendant in addition to possession—that is, a threat. See State v. Dow, 2016 VT 91, ¶ 8, 202 Vt. 616, 152 A.3d 437 ("[T]he State must prove that defendant subjectively intended to threaten the individual with the deadly weapon." (quotation omitted)). In contrast, unlike mere possession, the specific intent to harm required for using or attempting to use a deadly weapon can be inferred from a defendant's actions. State v. Langdell, 2009 VT 125, ¶ 9, 187 Vt. 576, 989 A.2d 556 (mem.) ("Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence."). The foregoing only strengthens our conclusion that while a threat may be required where a defendant possesses a deadly weapon to prove specific intent, there is no such requirement where a defendant uses or attempts to use the weapon.

¶ 13. Finally, defendant argues that there is insufficient evidence that he attempted to use a deadly weapon on complainant because he threw the knife at the wall instead of at her, and only the handle stuck in. However, the "State need not prove that an object is actually capable of causing death or serious bodily injury in the moment for that object to qualify as a deadly weapon within the context of a charge for first degree aggravated domestic assault under 13 V.S.A. § 1043(a)(2)." Kuzawski, 2017 VT 118, ¶ 14. Whether the handle or blade ultimately struck the wall makes no difference to our analysis. "The statute does not require immediate dangerousness in fact. Instead, the statute focuses on the use of any object and whether such use is known to be capable of producing death or serious bodily injury." Id. (quotation and alteration omitted). Defendant suggests that because the knife hit the wall instead of complainant, the State has failed to prove he attempted to use the weapon on her as required by 13 V.S.A. § 1043(a)(2). However, it is commonly known that throwing a knife in someone's direction is capable of producing death or serious bodily injury and the jury was entitled to infer defendant's intent to do so from his actions. Here, defendant's throwing of the knife in complainant's direction was certainly enough

6

for a reasonable trier of fact to conclude beyond a reasonable doubt that defendant was attempting to harm complainant with the knife. See Perez, 2006 VT 53, ¶ 19.

### III. Jury Instructions

¶ 14. We next address defendant's argument that the criminal division erred in instructing the jury. A review of a claim of error in jury instructions hinges on whether the defendant preserved the error for appeal. State v. Kolibas, 2012 VT 37, ¶ 11, 191 Vt. 474, 48 A.3d 610. The purpose behind this bright-line preservation rule is "to give the trial court a last chance to avoid an error." State v. Doleszny, 2004 VT 9, ¶ 10, 176 Vt. 203, 844 A.2d 773. Where the defendant timely and substantively objects "to an allegedly deficient instruction after the charge and before the jury retires, we assess whether, viewing the instructions in their entirety, they provided sufficient guidance to the jury without introducing prejudice into their deliberations" and will reverse only if the instructions "undermine confidence in the jury's verdict." Kolibas, 2012 VT 37, ¶ 11 (quotation omitted). When left unpreserved, this Court reviews arguments regarding jury instructions for plain error. State v. Bruno, 2012 VT 79, ¶ 43, 192 Vt. 515, 60 A.3d 610. Plain error will result in reversal "only in rare and extraordinary cases where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." Id. (quotation omitted).

¶ 15. Defendant argues that the criminal division's erroneous interpretation of 13 V.S.A. § 1043(a)(2) led to improper instruction of the jury on unanimity, and that this improper instruction was made worse without a special verdict form. However, defendant failed to preserve his objection to this jury instruction by ultimately acquiescing to it before the charging conference and failing to subsequently object again at the charging conference. The only objection made by defendant's counsel regarding jury instructions was for the failure of the court to provide a self-defense instruction, which went unchallenged in this appeal. Because defendant's challenge to the jury instructions is not preserved, we review it only for plain error. See Bruno, 2012 VT 79, ¶ 43.

7

¶ 16. Because the criminal division's interpretation of 13 V.S.A. § 1043(a)(2) was proper, we do not detect plain error based on how the jury was provided with the unanimity instruction. The criminal division properly apprised the jury that all twelve members would have to agree that defendant either threatened complainant with the weapon or attempted to use it on her for the State to satisfy its burden. This was adequate to instruct the jury on the requirement of unanimity and does not rise to the level of plain error. As to the special verdict form, "criminal defendants do not have a right to have special interrogatories submitted to the jury, and indeed . . . the practice is disfavored." State v. Jones, 2008 VT 67, ¶ 26, 184 Vt. 150, 955 A.2d 1190. While occasionally "a statute may require a specific finding of the jury," we uphold the criminal division's determination that the jury instructions adequately covered the elements of the first-degree domestic assault charge, provided proper guidance on unanimity, and rendered defendant's special verdict questions redundant and unnecessary. Id. (quotation omitted). Under a plain error standard, defendant fails to show that the lack of a special verdict form or the criminal division's unanimity instruction "strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." See Bruno, 2012 VT 79, ¶ 43 (quotation omitted).

## IV. Probation Conditions

¶ 17. Lastly, we review defendant's challenge to the probation conditions imposed by the criminal division. Defendant challenges the conditions prohibiting him from consuming alcohol "to the extent [it] interfere[s] with [his] employment or the welfare of [his] family," mandating substance use screening, and prohibiting him from possessing deadly weapons. This Court typically applies an abuse of discretion standard in reviewing probationary conditions. State v. Putnam, 2015 VT 113, ¶ 28, 200 Vt. 257, 130 A.3d 836. Further, where a defendant fails to argue for plain-error review in their briefing, we decline to engage in such an analysis. See State v. Nash, 2019 VT 73, ¶ 15, 211 Vt. 160, 221 A.3d 386 (declining to engage in plain-error review because "appellant did not argue for [such review]").

8

¶ 18.  Defendant failed to preserve his challenge to any of his appealed probation conditions by failing to object to them at the trial court level.  Defendant acquiesced to the alcohol related conditions when he admitted that "alcohol may have played a part here . . . .  So we have no objection to the screening for alcohol or any conditions that would be imposed following that."  Further, defendant failed to preserve his challenge to the firearm condition by failing to object to it after the presentence investigation report was filed or at sentencing.  See State v. Lumumba, 2018 VT 40, ¶ 11, 207 Vt. 254, 187 A.3d 353 ("If the defendant has notice of the State's intent to seek particular conditions—because the conditions were recommended in the PSI or raised at sentencing—then the defendant can object at sentencing before the sentence is imposed.").

¶ 19.  Defendant also fails to argue for plain-error review of these probation conditions in his briefing.  While defendant does briefly mention plain error in the last paragraph of his brief, he fails to adequately brief these arguments regarding his probation conditions.  See V.R.A.P. 28(a).  Instead, defendant encourages us to evaluate whether the conditions are an abuse of discretion, or, "reasonably related to a defendant's particular characteristics," the standard which would have been applied had defendant preserved his objections.  Putnam, 2015 VT 113, ¶ 38.  Because defendant failed to preserve this issue for appellate review and does not articulate a plain-error argument regarding his probation conditions in his briefing, we decline to consider his arguments.  Nash, 2019 VT 73, ¶ 18 (declining to address plain error when not argued on appeal).

Affirmed.

FOR THE COURT:

_____

Associate Justice

9